# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MARQUISE LARNELL WREN,

Defendant-Appellant.

UNPUBLISHED
January 19, 2016

No. 324118
Kalamazoo Circuit Court
LC No. 2014-000721-FC

Before: BOONSTRA, P.J., and SAWYER and MARKEY, JJ.

PER CURIAM.

Defendant appeals by right his conviction, following a jury trial, of armed robbery, MCL 750.529. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 126 months to 25 years' imprisonment, with credit for 141 days served. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises out of an armed robbery of James Gillespie, who testified about the armed robbery at preliminary examination and subsequently died before trial. Before trial, defendant objected to the use of Gillespie's preliminary examination testimony on Confrontation Clause grounds. The trial court overruled defendant's objection and Gillespie's preliminary examination testimony was admitted at trial.

Gillespie testified that he was in the kitchen of his apartment listening to music and drinking a beer when someone knocked at his door. Gillespie said, "Come in." Gillespie then walked out of his kitchen and observed defendant, whom he recognized as the man he had observed earlier in the day smoking and drinking outside of a neighbor's apartment, entering his apartment. He testified that defendant said "Where's the sh** at?" Defendant had a gun and pointed it Gillespie's face. Defendant then grabbed Gillespie, ripping his shirt, and pulled Gillespie throughout the apartment, saying, "Where's the sh** at? The sh** ain't in here?" and "Don't move. Don't move. Don't move." Gillespie testified that he believed that defendant was talking about drugs or money. Gillespie responded, "There's nothing here. I don't have nothing. I don't have any money. There ain't nothing in this house." Defendant dragged Gillespie into one of the back rooms and pointed his gun at the back of Gillespie's head. Defendant then made

-1-

Gillespie lie on the floor with his eyes closed while defendant searched through the room and another nearby room.

After defendant failed to find anything, he made Gillespie sit on his couch, and defendant held the gun to the back of Gillespie's head. Defendant then struck Gillespie in the back of his head with the gun. Gillespie testified that he was seated "executioner style" and that he thought defendant was going to kill him. Defendant then laughed, moved the gun away from Gillespie's head, and walked out of the apartment.

Gillespie waited until he believed defendant was gone and went to a friend's, Michael Anderson's, apartment. Gillespie and Anderson had had dinner together earlier that day at Anderson's apartment; Anderson testified that Gillespie had consumed alcohol and had taken an unspecified medication during this time. Anderson testified that approximately one hour after Gillespie had left his apartment, he heard a banging on his door. When Anderson answered the door, he observed Gillespie looking disheveled, with red marks on his head and neck, and bruises on his arm. Anderson testified that Gillespie looked scared and he had tears in his eyes. Anderson dialed 911.

Kalamazoo Police Sergeant Brian Boyer responded to Anderson's apartment and interviewed Gillespie. Gillespie was injured, and Boyer called an ambulance. Boyer testified that Gillespie appeared to be intoxicated and that his mood changed several times. Gillespie gave Boyer a description of defendant and told him that defendant was wearing a green, white, and brown fleece that looked like a jogging suit with stripes on it. Kalamazoo Police Officer Sean Szekely also made contact with Gillespie, and he testified that Gillespie stated that defendant was inside Apartment 1 at 1328 Cameron Street, and was wearing a black jacket with neon colors. Szekely immediately ran to the back of that residence to ensure that defendant was not fleeing. While behind the residence, Szekely observed defendant on the back porch of Apartment 1, which had a door to the outside, wearing a jacket matching the description given by Gillespie. Szekely testified that defendant went back into the residence after seeing Szekely outside. Szekely testified that he believed defendant was attempting to leave the residence.

While Szekely remained behind the residence, Kalamazoo Police Officers Marcel Behnen and Timothy Knight went to the front door and were greeted by Gail Grays, defendant's aunt. Grays gave them permission to enter the home. The officers observed defendant seated on the couch next to a jacket matching the description given by Gillespie. Behnen testified that defendant smelled of alcohol, and that defendant admitted to drinking. Eventually, it was determined that defendant had a blood alcohol content (BAC) of 0.13.

Boyer subsequently received information that a man matching Gillespie's description had been located in the neighboring apartment, and Boyer asked Behnen and Knight to bring defendant onto the front porch, to determine whether Gillespie could identify him. Boyer took Gillespie to the adjacent apartment, and used his flashlight so that Gillespie could see defendant's face. Gillespie identified defendant as the man who had the gun in Gillespie's apartment. Gillespie testified that defendant was angry that Gillespie identified him. The officers then placed defendant in a police car. No gun was found in Grays' apartment.

Grays testified that her son, Shaheed Muhammed[1] was traveling through Chicago, where defendant lived, and brought defendant to her home. Defendant stayed at her home for two days. Grays testified that, at the time of the armed robbery, defendant was downstairs watching a movie. She testified that defendant would use her back and front porch to smoke. On cross-examination, Grays testified that she could not say one way or another whether defendant had left her apartment at the time of the armed robbery.

Muhammed testified that on the morning of May 18, 2014, he checked out of his hotel and arrived at Grays' apartment around noon to pack some of his belongings. Muhammed testified that defendant helped him throughout the day and at night. Muhammed and defendant were both going to Georgia early in the morning the next day. Muhammed testified that after loading Muhammed's truck, he and defendant watched a movie together. Muhammed testified that defendant did not leave the apartment that night. Muhammed did not speak with the police when they arrived.

Defendant was originally charged with felonious assault, MCL 750.82, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. After the preliminary examination, two additional counts were added: armed robbery and another count of felony-firearm. Before trial, the trial court amended the information on the motion of the prosecutor to include only the armed robbery count and one felony-firearm count, and it also included felonious assault as a lesser-included offense in the jury instructions. Defendant was convicted of armed robbery and acquitted of the felony-firearm charge. The trial court sentenced defendant as previously noted. This appeal followed.

## II. ADMISSIBILITY OF PRELIMINARY EXAMINATION TESTIMONY

Defendant argues that he was denied his right to confrontation, under both the Confrontation Clause, US Const, Am VI; Const 1963, art 1, § 20, and MRE 804(b)(1) because he was denied the opportunity to confront Gillespie, who had died between the preliminary examination and trial. We disagree. We review de novo the constitutional question of whether a defendant was denied the constitutional right to confront witnesses against him. *People v Beton*, 294 Mich App 191, 195; 817 NW2d 599 (2011).

"The Confrontation Clause prohibits the admission of all out-of-court testimonial statements unless the declarant was unavailable at trial and the defendant had a prior opportunity for cross-examination." *People v Chambers*, 277 Mich App 1, 10; 742 NW2d 610 (2007). MRE 804(b)(1) permits the trial court to admit into evidence the former testimony of an unavailable witness if the opposing party "had an opportunity and similar motivation to develop [his] testimony on cross-examination." *People v Adams*, 233 Mich App 652, 659; 592 NW2d 794 (1999).

---

[1] Muhammed's given name is Richard Forester, but he goes by and is referred to as Muhammed throughout the transcripts.

As long as the conditions of unavailability and prior opportunity for cross-examination are met, "[f]ormer testimony is admissible at trial under both MRE 804(b)(1) and the Confrontation Clause." *People v Garland*, 286 Mich App 1, 7; 777 NW2d 732 (2009), citing *Crawford v Washington*, 541 US 36; 124 S Ct 1354; 158 L Ed 2d 177 (2004).

In this case, the parties do not contest that Gillespie's preliminary examination testimony was testimonial. See *Crawford*, 541 US at 68 (prior preliminary hearing testimony is testimonial); *People v Sardy*, ___ Mich App ___; ___ NW2d ___ (2015) (Docket No. 319227), slip op at 3. The parties also do not contest that Gillespie was unavailable because of his death. Therefore, the only issue is whether defendant had a prior opportunity for cross-examination. Defendant claims that he did not have a constitutionally sufficient prior opportunity for such cross-examination, principally because at the preliminary examination defendant had not yet been charged with armed robbery, but only felonious assault. We disagree.

As a preliminary matter, contrary to defendant's argument, we do not accept as a rule of law that cross-examination conducted at a preliminary examination cannot satisfy the Confrontation Clause. Adopting such a rule would ignore well-established law. See MCL 768.26 ("Testimony taken at [a] preliminary hearing . . . may be used by the prosecution whenever the witness giving such testimony cannot, for any reason, be produced at the trial"); *California v Green*, 399 US 149, 165-166; 90 S Ct 1930; 26 L Ed 2d 489 (1970) (holding that the admission of preliminary hearing testimony where cross-examination has not been limited in scope or nature does not violate the Confrontation Clause); *Garland*, 286 Mich App at 7 (finding that admitted preliminary examination testimony did not violate the defendant's right to confrontation). The scope and nature of the cross-examination, however, must not have been significantly limited for a cross-examination to be adequate. *Green*, 399 US at 166.

"Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v Fensterer*, 474 US 15, 20; 106 S Ct 292; 88 L Ed 2d 15 (1985); see also *Sardy*, ___ Mich App at ___, slip op at 6. Here, defendant had the opportunity to adequately cross-examine Gillespie at the preliminary examination. Defendant's cross-examination was more extensive than the prosecutor's direct examination and was not limited by the trial court. Defense counsel cross-examined Gillespie on numerous topics, including whether Gillespie was intoxicated; why Gillespie allowed someone to enter his home without first seeing who it was; why Gillespie did not try to escape; what defendant was allegedly wearing when the assault happened; Gillespie's lack of knowledge about the individuals living around him; the logistics of how Gillespie was dragged through the apartment; what happened after defendant exited Gillespie's apartment; how Gillespie's apartment was laid out; what defendant was looking for when he entered Gillespie's apartment; and what kind of gun defendant had. Importantly, although defendant had not yet been charged with armed robbery at the time of the preliminary examination, defense counsel cross-examined Gillespie specifically on the larceny element of armed robbery. Thus, Gillespie's account of the event was clearly tested by defense counsel's questioning at the preliminary examination. *Crawford*, 541 US at 61. Defense counsel's cross-examination was in no way limited in nature or scope, *Green*, 399 US at 166, and defense counsel effectively obtained statements that could cause a jury to call into question Gillespie's credibility on all of the elements of the crimes for which defendant was ultimately charged. Moreover, defense counsel used Gillespie's responses, in her closing

argument at trial, to call Gillespie's credibility into question; these responses thus provided adequate evidence for defense counsel to formulate and present an argument based on credibility. See *Sardy*, ___ Mich App at ___, slip op at 6.

Additionally, defense counsel had a similar motive to cross-examine Gillespie. *People v Farquharson*, 274 Mich App 268, 278; 731 NW2d 797 (2007). Defendant had an interest in disproving Gillespie's testimony both at the preliminary examination and at trial because both proceedings involved the issue of substantially similar intensity, i.e., defendant's involvement in an assaultive felony perpetrated against Gillespie. *Farquharson*, 274 Mich App at 278. Moreover, what was at stake in both proceedings was ultimately the same--defendant's conviction of a felony; defense counsel thus had similar motive in both instances to cross-examine Gillespie thoroughly about the events of May 18, 2014. *Sardy*, ___ Mich App at ___, slip op at 6-7. Most importantly, defense counsel did in fact elicit testimony from Gillespie, at the preliminary examination, relevant to the larceny element of armed robbery. *Id*.

On this record, we conclude that defendant had adequate prior opportunity to cross-examine Gillespie regarding his testimony about the events of May 18, 2014 and, therefore, neither defendant's right to confrontation nor the Michigan Rules of Evidence were violated when the preliminary examination testimony was admitted. Consequently, we hold that the trial court did not err in admitting Gillespie's preliminary examination testimony under either Confrontation Clause or MRE 804(b)(1). *Adams*, 233 Mich App at 657-658.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, defendant contends that he was denied the effective assistance of counsel when defense counsel did not move to redact the preliminary examination testimony. We disagree. Because defendant did not move the trial court for a new trial or evidentiary hearing, our review is limited to mistakes apparent on the record. *People v Rodriguez*, 251 Mich App 10, 38; 650 NW2d 96 (2002); *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000).

To establish ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness and, but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different. *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012), citing *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011).

"Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Trakhtenberg*, 493 Mich at 52, citing *Strickland v Washington*, 466 US 668, 689; 104 S Ct 2052; 80 L Ed 2d 674 (1984). This Court "will not substitute our judgment for that of defendant's counsel, nor will we use the benefit of hindsight to assess counsel's performance." *People v Unger (On Remand)*, 278 Mich App 210, 258; 749 NW2d 272 (2008). "A particular strategy does not constitute ineffective assistance of counsel simply because it does not work." *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004).

Defendant challenges specific statements that he contends should have been redacted from the preliminary examination transcript; specifically, he challenges Gillespie's statement that defendant was in a gang from Chicago and wanted to kill him or start trouble (a fact that Gillespie claimed to know by simply looking at defendant), and Gillespie's statement that he was testifying so that defendant could not get out and come back to cause trouble or kill him. Although these statements were arguably irrelevant or inadmissible, see MRE 403, 602, 701, we conclude that defense counsel's failure to have them removed from the transcript could constitute sound trial strategy. Defense counsel's strategy was to portray Gillespie as incredible and possibly "crazy." In her closing argument, defense counsel referred back to the contested testimony:

> And I did ask you to look at the whole picture. When you look at the whole picture there are some real problems with the picture. Mr. Gillespie had a story, he had a story and he told you on - - he told you about it. Sounds a little crazy to be true, doesn't it? Mr. Gillespie testified that he thought my client was a gang from Chicago and that he had come here just to kill him and start trouble. Let's talk about some problems with the story.

Defense counsel's failure to move to redact these two statements could have aided counsel's trial strategy to portray defendant as unbelievable. We conclude that the use of the statements in this manner was trial strategy, even if it did not work, *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004), and we will not address the use of the statements with "the benefit of hindsight to assess counsel's performance," *People v Unger (On Remand)*, 278 Mich App 210, 258; 749 NW2d 272 (2008).

The last statement that defendant claims his counsel should have moved to redact was Gillespie's statement that the gun defendant used was smaller than the gun an officer within the courtroom possessed. This statement was not irrelevant or unfairly prejudicial because it was made in the course of Gillespie's description of the weapon wielded during the robbery, and was thus probative evidence about the weapon element of the armed robbery charge. Defense counsel was not deficient for failing to make a meritless motion to redact that statement. *People v Riley*, 468 Mich 135, 142; 659 NW2d 611 (2003).

Defendant next argues that defense counsel was ineffective for failing to object and obtain a ruling on the record regarding two instances where witnesses testified that defendant was on parole or probation. Defense counsel did object to the first instance, where Behnen stated that defendant was on parole in Illinois. However, the basis for counsel's objection is not apparent from the record, as defense counsel and the prosecution discussed the matter with the trial court during a sidebar at the bench. From the record, it appears clear that defense counsel did not wish to openly state her objection, presumably because she did not want to further bring the jury's attention to the fact that defendant was on parole. "Certainly there are times when it is better not to object and draw attention to an improper comment." *People v Bahoda*, 448 Mich 261, 287 n 54; 531 NW2d 659 (1995). Presumably for the same reason, defense counsel did not object to another instance where a witness testified that defendant was on probation. Defense counsel's failure to object in that instance comported with her trial strategy of minimizing the jury's awareness of the fact that defendant was on parole or probation. Considering that defense counsel's actions appear to be strategic, defense counsel's actions fell with the range of effective

assistance. *Lockett*, 295 Mich App at 187. Because defense counsel's actions were "born from a sound trial strategy," defendant has failed to overcome the strong presumption that counsel's performance met an objective standard of reasonableness. *Trakhtenberg*, 493 Mich at 52, citing *Strickland v Washington*, 466 US 668, 689; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

Further, even assuming that any of the above conduct constituted objectively unreasonable performance by defense counsel, defendant cannot demonstrate that he was prejudiced, in light of the evidence supporting his guilt. Therefore, defendant cannot prove that "but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51, citing *Armstrong*, 490 Mich at 290. We conclude that defendant cannot establish that he was denied effective assistance of counsel.

Affirmed.


/s/ Mark T. Boonstra
/s/ David H. Sawyer
/s/ Jane E. Markey