# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 14, 2018

Plaintiff-Appellee,

v

No. 329480
Oakland Circuit Court
LC No. 2004-194051-FC

ERIC DARNELL GALLOWAY,

Defendant-Appellant.

ON REMAND

Before: MARKEY, P.J., and METER and SHAPIRO, JJ.

PER CURIAM.

Defendant was convicted after a bench trial of second-degree murder, MCL 750.317, first-degree fleeing or eluding a police officer, MCL 257.602a(5), operating a motor vehicle with a suspended license causing death, MCL 257.904(5), failure to stop at the scene of an accident causing death, MCL 257.617(3), two counts of second-degree fleeing or eluding resulting in serious injury, MCL 257.602a(4)(a), two counts of operating a motor vehicle with a suspended license causing serious injury, MCL 257.904(5), receiving or concealing a stolen motor vehicle, MCL 750.535(7), and possession of marijuana, MCL 333.7403(2)(d). He was sentenced as a third habitual offender, MCL 769.11, to 32 to 50 years' imprisonment for the second-degree murder conviction, 14 to 30 years' imprisonment for the first-degree fleeing or eluding a police officer, operating a motor vehicle with a suspended license causing death, and failure to stop at the scene of an accident causing death convictions, 9 to 20 years' imprisonment for the two second-degree fleeing or eluding resulting in serious injury convictions, 4 to 10 years' imprisonment for the two operating a motor vehicle with a suspended license causing serious injury convictions, 3 to 10 years' imprisonment for the receiving or concealing a stolen motor vehicle conviction, and 235 days' jail time for the possession of marijuana conviction. This Court affirmed defendant's convictions and sentences. *People v Galloway*, unpublished per curiam opinion of the Court of Appeals, issued February 14, 2006 (Docket No. 257850) (*Galloway I*). This Court also affirmed the trial court's subsequent denial of defendant's motion for relief from judgment. *People v Galloway* unpublished per curiam opinion of the Court of Appeals, issued June 15, 2017 (Docket No. 329480) (*Galloway II*), which in lieu of granting leave to appeal, our Supreme Court vacated and remanded to this Court. *People v Galloway*, 501 Mich 950; 904 NW2d 854 (2018) (*Galloway III*).

-1-

In *Galloway III*, our Supreme Court determined that this Court in *Galloway II* failed to address defendant's argument that his trial counsel did not account for habitual offender enhancement when advising defendant regarding the applicable sentence guidelines range. *Galloway III*, 501 Mich 950. The Court's order directed this Court to remand this matter to the trial court to conduct a hearing pursuant to *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973), and to direct the trial court to "determine whether the defendant was denied the effective assistance of trial counsel based on his claim that he would have accepted a plea offer with a sentencing agreement, but for counsel's error, and that the trial court would have accepted the agreement." *Galloway III*, 501 Mich 950. This Court entered its order in accordance with our Supreme Court's directive and remanded this matter to the trial court for an evidentiary hearing

> to determine whether "defendant was denied the effective assistance of trial counsel based on his claim that he would have accepted a plea offer with a sentencing agreement, but for counsel's error, and that the trial court would have accepted the agreement. At the conclusion of the hearing, the trial court shall reconsider the defendant's motion for relief from judgment under the prejudice analysis applicable to claims of ineffective assistance of counsel at the plea stage. See *People v Douglas*, 496 Mich 557 (2014)." [*People v Galloway*, unpublished order of the Court of Appeals, entered February 8, 2018 (Docket No. 329480), quoting *Galloway III*, 501 Mich at 950.]

The trial court conducted a *Ginther* hearing on April 11, 2018 there. Afterwards, the trial court entered an order on April 19, 2018, denying defendant's motion for relief from judgment. Since the trial court's order and a transcript of the *Ginther* hearing with the trial court's findings have now been filed with this Court, we will now endeavor to "resolve the issues presented by the defendant." *Galloway III*, 501 Mich at 950. We again conclude defendant's arguments do not merit relief and affirm.

Before his trial, defendant's counsel, Mitchell Ribitwer, wrote to defendant on June 2, 2004, advising defendant of the likely minimum sentence under the guidelines that he faced should he be convicted of the main charge of second-degree murder ("225 months to 375 months, or life") or the lesser included offense of manslaughter ("50 to 150 months"). On June 8, 2004, Ribitwer again wrote defendant advising him of a pretrial conference to be held on June 11, 2004, and of a prosecution offer of a plea bargain for defendant to plead guilty or no contest to the pending charges with "a sentence agreement with you, and approved by the Court, for a sentence of 10 to 15 years . . . ." The letter advised defendant that the sentence bargain was "a considerable departure from your guideline" of a minimum sentence regarding second-degree murder ("225 months (18 ¾ years) to 375 months (31 ¾ years) or life") or the lesser included offense of manslaughter ("minimum of 50 months, which is 4.2 years up to 150 months, which is 12.5 years"). Although this letter stated that defendant's maximum sentence "could be up to life because of the habitual charges", it did not explain the effect of defendant's habitual offender status on his guidelines recommended minimum sentence range.

During the June 11, 2004 pretrial hearing, Ribitwer stated that he had met with defendant on June 10, 2004, to discuss the prosecution plea offer to recommend a minimum sentence of 10 to 15 years' imprisonment if defendant pleaded guilty to second-degree murder. Ribitwer stated that defendant had rejected the prosecution's offered plea agreement and that defendant

requested a bench trial. The trial court stated that the proposed plea agreement "is way under the guidelines [and] is not on the table, after a Bench trial." In response, Ribitwer stated that he had explained to defendant that the plea bargain was a "departure on the minimum end of eight and a half years[.]" The trial court replied: "Yeah, that's substantial. And that will not even be considered . . . ." Ribitwer also commented that because of the habitual, even if defendant were convicted of only manslaughter, the guidelines would still be 50 to 150 months.

The trial judge clarified her position when she stated, "I want [defendant] to understand that. He's not - - you know - - because he agrees to waive jury doesn't mean that I'm deviating below the guidelines. Okay? That's what I was saying to you at side bar." The trial court then conducted a jury trial waiver colloquy with defendant and during the colloquy the trial court asked defendant, "[a]nd this sentence agreement that the Prosecutor and the - - and your attorney had worked out, is not on the table, after a Bench trial. You understand that?" Defendant replied, "I understand."

After trial, the court found defendant guilty of second-degree murder and the other charges. On July 26, 2004, the trial court sentenced defendant. While Ribitwer had calculated in his pretrial letters 47 prior record variable (PRV) points and 95 offense variable (OV) points, resulting in an PRV/OV guidelines grid of D/II, the actual guidelines scores were 77 PRV points and 100 OV points. This, correct actual score resulted in a recommended guidelines grid (PRV/OV) of F/III. Ribitwer had also failed to consider that the habitual offender charges would increase the upper end of the recommended minimum sentence range. Consequently, defendant's recommended minimum sentence guidelines range was calculated at 365 to 900 months' imprisonment for his second-degree murder conviction, as opposed to the 225 to 375 months stated in Ribitwer's letters. The trial court sentenced defendant to 32 to 50 years' (384 to 600 months') imprisonment for the second-degree murder conviction.

On June 18, 2013, defendant, proceeding *in propria persona*, moved for relief from judgment in which he alleged the denial of his right to the effective assistance of counsel because his court-appointed attorney "gave substandard advice about his sentence exposure under the Sentencing Guidelines during plea negotiations." Defendant based his claim on the two letters Ribitwer wrote him dated June 2 and 8, 2004, both of which he had received before rejecting the prosecution's plea offer that contained a sentence bargain of 10 to 15 years. Defendant asserted that good cause was established because defense counsel grossly underestimated and misrepresented defendant's "sentencing exposure." Defendant asserted he was prejudiced "because he relied on his counsel's advice regarding his sentence exposure [in] formulating his decision to reject [the] plea agreement" offered by the prosecutor.

At a hearing on March 25, 2015, the trial court recognized the necessity of establishing both good cause and prejudice to support defendant's motion for relief from judgment. The trial court initially focused on the prejudice prong, noting that defense counsel had made an "avoidably erroneous guidelines calculation." The trial court focused on the plea offer of 10 to 15 years' imprisonment in comparison to the guidelines range of 18¾ to 31¼ years (225 to 375 months) identified by defense counsel and the adjudicated guidelines range of 30¼ to 75 years (365 to 900 months) used at sentencing. The trial court reasoned there was a stark difference when comparing the plea offer to the "erroneously advised range" and the accurate or adjudicated range. The trial court determined that defendant should not be afforded the benefit

of hindsight or "the benefit of a starker contrast." Although the trial court's reasoning is difficult to follow, the court appears to have found that the "starker contrast" of the accurate guidelines scoring would not have caused defendant to accept the plea offer; therefore, defendant had failed to establish prejudice to justify relief from judgment. This Court affirmed, *Galloway II*, but our Supreme Court vacated this Court's opinion and remanded the matter to this Court. *Galloway III*. This Court then remanded the matter to the trial court on February 8, 2018 to conduct a *Ginther* hearing "to determine whether "defendant was denied the effective assistance of trial counsel based on his claim that he would have accepted a plea offer with a sentencing agreement, but for counsel's error, and that the trial court would have accepted the agreement.' " *Galloway*, unpub order, quoting *Galloway III*, 501 Mich 950.

On April 11, 2018, as directed by this Court, the trial court conducted a *Ginther* hearing. At the hearing, the two June 2004 letters authored by defense counsel, Matthew Ribitwer, were entered into evidence, and both defendant and Ribitwer testified. Defendant acknowledged that the letter he received from defense counsel identified the maximum penalty for second-degree murder as "life" but indicated "that isn't the way that I understood it." Defendant asserted that defense counsel's reference to his status as a third habitual offender was "only mentioned . . . in regards to the manslaughter charge" but did not refer to its effect on the sentence guidelines for a second-degree murder conviction. Defendant acknowledged that based on his receipt of the June 8, 2004 letter from defense counsel, he understood the possible sentence for a second-degree murder conviction to be 18 to 31 years. Defendant asserted that his request for relief from judgment was based on his receipt from defense counsel of "incorrect advice regarding my minimum sentence if found guilty of second-degree murder" and that had he known the possibility that the guidelines range would extend to 900 months, that it would have "definitely" affected his consideration of the plea offer. When asked how this information would have affected his decision-making, defendant stated, "Knowing that -- that I faced a minimum of 32 years, I was -- . . . -- I was -- you know, *maybe* would have took those 10 years knowing I was facing an extra 22 years versus taking 10 years." (Emphasis added). Defendant denied being aware that he was facing the possibility of 32 years in prison when he rejected the offer.

Defendant also denied communicating with his attorney regarding the sentencing guidelines range other than through defense counsel's correspondence. Defendant admitted that his conviction was virtually certain given the existence of his confessions, but said he was not sure whether he would be convicted of second-degree murder or manslaughter. Defendant could not recall whether defense counsel had advised him that the probability of his conviction was 100%. Defendant admitted, however, that defense counsel had advised him to accept the plea offer. Defendant indicated some confusion about the number of his prior convictions for drug charges and acknowledged providing defense counsel with vague information regarding those convictions. Defendant stated that despite being given a copy of his presentence investigation report, he "never looked at it." Defendant could not recall whether at the time leading up to his trial, he was actively attending or listening to his defense counsel.

Ribitwer testified that he always informs his clients of plea offers and that any calculation of the guidelines range before trial cannot necessarily accurately predict what information will come out at trial to affect the scoring of the guidelines. Consequently, the only promise Ribitwer would provide to a client "is you're going to get more time if you don't take a deal." Ribitwer indicated that the prosecution's plea offer in this case was unusual in light of the egregious

nature of the conduct alleged and the certainty of conviction. He further indicated that he discussed the offer with defendant multiple times. Ribitwer predicted the probability of defendant's conviction to be "[a] hundred percent." Based on the information defendant provided regarding his prior criminal history, Ribitwer conveyed a guidelines range of "somewhere between 225 months to 375" to defendant, but he also informed defendant "he could be looking at life in prison." With regard to his discussions with defendant, Ribitwer testified that the prosecutor's office rarely offered the kind of sentence agreement that was offered in this case in similar situations. Ribitwer thought the plea offer was "the deal of the century" and "pretty much a gift based upon all the circumstances of this case." According to Ribitwer, defendant believed that if he were convicted of manslaughter, "his guidelines would be lower, and he could get a better sentence." But Ribitwer advised defendant that "if you go to trial and lose, you're going to get 30-plus years." After relating the egregious nature of the facts of the case, Ribitwer testified that he advised defendant that he was "going to go to prison for more than 30 years because the guidelines called for it, and I told him, you could get life." Ribitwer said he told defendant "he was stupid for not taking the plea." Ribitwer testified that he made numerous trips to the jail to consult with defendant in an effort to convince him to accept the plea offer.

When queried, Ribitwer asserted that the calculated guidelines range did not affect defendant's decision to reject the plea offer. Rather, defendant's focus was on not wanting to spend 10 years in prison. According to Ribitwer, had defendant asserted on the date of trial that he wanted to accept the plea offer, Ribitwer would have approached the prosecutor, but he was unsure of what the prosecutor's response would have been at that late date. Ribitwer indicated that typically "if somebody rejects an offer and the prosecutor brings everybody into the courtroom and they're ready to go to trial on that day, generally the offer is off the table." Ribitwer was certain that the trial judge would not have accepted a plea on the day of trial. When asked whether the correct calculation of the guidelines would have affected defendant's decision to reject the plea offer, Ribitwer opined that it would not have "because I told him he could do life in prison. He knew he was facing life in prison. What difference if it was 375, 600 or 900 [months], and I told him he's going to get . . . 25, 30 years or more in prison."

The trial court allowed defendant to testify regarding his recollection of the morning of trial. Defendant said he informed defense counsel that he wanted to accept the plea at that time, and defense counsel began filling out a form to take to the courtroom to "see if the judge is willing to accept the plea." When trial was about to begin, defendant asked Ribitwer what occurred with the plea and was told "the family said it or the prosecutor said that the family said it, but what he said was that, you know, through what I remember is he said that the family said that because we're here already, we might as well go through with the trial."

At the conclusion of the *Ginther* hearing, the trial court ruled it would deny defendant's motion for relief from judgment based on ineffective assistance of counsel. With respect to whether defendant would have accepted the plea offer if he had been advised of the actual later adjudicated sentence guidelines range, the trial court explained that in his opinion the answer was "no." Regarding whether the then trial judge would have accepted the plea bargain on the day of trial, the trial court stated "I don't know whether I can answer, but I'll do the best that I can." The trial court noted that the parties agreed that on the date of the pretrial, June 11, 2004,

the trial judge would have accepted the plea bargain, but that whether the trial judge would have accepted the plea bargain on the first day of trial was beyond the scope of the remand order.

The trial court entered its order on April 19, 2018 denying defendant's motion for relief from judgment "for the reasons stated on the record" at the evidentiary hearing. The matter has now returned to this Court, and our Supreme Court has mandated that this Court "resolve the issues presented by the defendant." *Galloway III*, 501 Mich at 950.

"We review a trial court's decision on a motion for relief from judgment for an abuse of discretion and its findings of facts supporting its decision for clear error." *People v Swain*, 288 Mich App 609, 628; 794 NW2d 92 (2010). The trial court commits an abuse of discretion when its decision falls outside the range of reasonable and principled outcomes, or makes an error of law. *Id*. We will determine a trial court's finding is clearly erroneous if, on review of the entire record, we are left with a definite and firm conviction that a mistake has been made. *People v McSwain*, 259 Mich App 654, 682; 676 NW2d 236 (2003).

A defendant's claim of ineffective assistance of counsel presents a mixed question of law and fact. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). "A judge must first find the facts, then must decide whether those facts establish a violation of the defendant's constitutional right to the effective assistance of counsel." *People v Grant*, 470 Mich 477, 484; 684 NW2d 686 (2004). This Court reviews the trial court's findings of fact for clear error, and reviews questions of constitutional law de novo. *Trakhtenberg*, 493 Mich at 47. "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011).

In reviewing claims of ineffective assistance of counsel, Michigan applies the standard established in *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). See *People v Hoag*, 460 Mich 1, 5-6; 594 NW2d 57, 59 (1999). This standard requires a convicted defendant establish "that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. A defendant is also entitled to the effective assistance of counsel during the pretrial plea-bargaining process. *People v Douglas*, 496 Mich 557, 591-592; 852 NW2d 587 (2014), citing *Lafler v Cooper*, 566 US 156, 162; 132 S Ct 1376; 182 L Ed 2d 398 (2012). "A defendant seeking relief for ineffective assistance in this context must meet *Strickland's* familiar two-pronged standard by showing (1) 'that counsel's representation fell below an objective standard of reasonableness,' and (2) 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Douglas*, 496 Mich at 592, quoting *Lafler*, 566 US at 163. When a defendant contends that trial counsel's ineffectiveness resulted in prejudice because the defendant rejected a plea offer and stood trial,

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence

-6-

that in fact were imposed. [*Douglas*, 496 Mich at 592, quoting *Lafler*, 566 US at 164 (quotation marks omitted).]

As with any claim of ineffective assistance of counsel, the defendant must establish the factual predicate of his claim. *Douglas*, 496 Mich at 592, citing *Hoag*, 460 Mich at 6.

Initially we note that the trial court on remand did not explicitly address the prejudice analysis as outlined in *Douglas*, 496 Mich at 592, and *Lafler*, 566 US at 163-164. But the trial court, based on the evidence presented to it, found that defense counsel's error—inaccurate advice regarding the pertinent sentencing guidelines range—did not affect defendant's rejection of the offered plea bargain. In other words, defendant failed to establish a reasonable probability that with accurate advice regarding the sentencing guidelines, i.e., but for counsel's error, " 'defendant would have accepted the plea' " bargain. *Douglas*, 496 Mich at 592, quoting *Lafler*, 566 US at 164. In light of the evidence presented to the trial court at the *Ginther* hearing, we are not "left with a definite and firm conviction that the trial court made a mistake." *Armstrong*, 490 Mich at 289. Because the trial court did not clearly err in its factual determination regarding the effect of counsel's error, defendant has failed to establish the prejudice prong of his claim of ineffective assistance of counsel. *Douglas*, 496 Mich at 592. It follows that the trial court did not abuse its discretion by denying defendant's motion for relief from judgment because he was not prejudiced by counsel's error. *Swain*, 288 Mich App at 628.

Although in his motion for relief from judgment defendant argues that he relied to his detriment on defense counsel's miscalculation of his sentencing guidelines range in electing to reject the offered plea bargain, there is no evidence to substantiate this claim. Even in the miscalculated version of the sentence guidelines, defendant was aware that his minimum sentence range encompassed a minimum sentence of up to 31½ years or even life imprisonment. Defendant was sentenced to 32 years' imprisonment (less credit for 235 days served), which is very close to the range calculated by defense counsel, albeit at the high end of the range. In addition, defense counsel informed defendant on at least two occasions, in writing, that he could receive a sentence of life in prison. As such, defendant was clearly informed that he faced a prolonged and lengthy time in prison if convicted.

Further, it is undisputed that defense counsel advised defendant to accept the plea based on the very high probability that he would, in fact, be convicted as charged. Defense counsel specifically told defendant that the prosecution's plea offer constituted a "considerable departure from your guideline." At the pretrial hearing, the trial court encouraged defendant to seriously consider the offer because it constituted a "substantial" departure from the sentencing guidelines range, and the court directly explained to defendant that upon conviction after a trial, it would not grant a downward departure in sentencing commensurate with the prosecution's plea offer. Defense counsel, at the pretrial hearing, again emphasized that the offer was "a departure on the minimum end" of defendant's anticipated guidelines range in excess of eight years. Thus, at the pretrial stage, defendant was apprised of and had sufficient information to know that the prosecution's offer would result, at a minimum, in a sentence reduction in the range of 3¼ to 16½ years in prison from even the miscalculated guidelines range. In addition, although defendant contends that it "definitely" would have made a difference in his consideration of the plea offer had he known of the possibility that the guidelines range would extent to 900 months, when asked specifically how this information would have affected his decision, defendant was

equivocal and uncertain, suggesting that "maybe" he "would have took those 10 years knowing I was facing an extra 22 years versus taking 10 years." Of further import is defendant's blatant acknowledgement that at the time leading up to trial he was not necessarily heeding or relying on the advice of his counsel.

According to Ribitwer's testimony, defendant's decision to reject the plea offer was more likely premised on his hope that he would only be convicted of manslaughter rather than second-degree murder and that he would thus receive a lesser sentence even without the plea agreement. Defendant was informed by defense counsel that if he were convicted of manslaughter, his guidelines range would be 4.2 to 12.5 years. Defense counsel also warned defendant that because of "the habitual charges," even with a manslaughter conviction, defendant could still face a maximum of "up to life." Defense counsel's letter indicated that manslaughter was a possible alternative outcome but not that it was likely. In his testimony, Ribitwer testified that in his conferences with defendant, he strongly and repeatedly encouraged defendant to accept the plea because his chances of conviction were 100%, and defendant faced a minimum of "30-plus years" and the possibility of life in prison. According to Ribitwer, he also informed defendant that even under the best-case scenario of a conviction for manslaughter, defendant still faced in excess of 10 years in prison because of his habitual offender status. The evidence suggesting that defendant's election to forego the plea offer was premised on the possibility of a conviction for manslaughter rather than second-degree murder obviates any reliance by defendant on the miscalculated guidelines range defense counsel provided and is contrary to his claim of ineffective assistance of counsel. Defendant's election to reject the plea offer was a gamble that not only would he be convicted of and sentenced for manslaughter but also that he would be sentenced to the lower end of the guidelines range for manslaughter. Defendant's gamble was inconsistent with defense counsel's advice to defendant. Even with a conviction and sentence for manslaughter, defendant actively ignored defense counsel's warning that he could still face life in prison or a minimum sentence in excess of that offered by the prosecutor. As such, we find nothing to support the contention that the miscalculated guidelines range was a basis for defendant's decision to reject the plea offer. So even though the trial court would have accepted the plea agreement at the pretrial, nothing supports defendant's contention that he would have accepted the plea offer if not for defense counsel's miscalculation of the sentencing guidelines range.

Defendant has failed to carry his burden of establishing entitlement to relief from judgment. There is no dispute that the terms of the plea offer were "less severe" than the actual sentence received. *Douglas*, 496 Mich at 592. But while acknowledging defense counsel's miscalculation of defendant's possible sentencing guidelines range, defendant has not shown that this error caused or even contributed to defendant's rejection of the prosecution's plea offer. While the trial court was willing to accept the plea offer at the pretrial hearing stage of the proceedings, defendant refused the offer despite sufficient information regarding the possible sentence he was facing if convicted after a trial and the multiple warnings and explanations regarding the limited availability of the offer and the substantive nature of the plea offer. Patently, defendant had sufficient information available during the plea negotiations despite defense counsel's incorrect guidelines calculation to permit defendant "to make an informed and voluntary choice between trial and a guilty plea." *People v Corteway*, 212 Mich App 442, 446; 538 NW2d 60 (1995). The miscalculated guidelines were effectively irrelevant to defendant's decision. Defendant focused on the possibility, albeit slim, of a conviction for manslaughter

rather than second-degree murder and a possible lesser sentence for that conviction. There is no evidence, other than to the contrary, that defendant was in any manner encouraged to proceed to trial on the off chance that he would be convicted of the lesser charge. Indeed, he was repeatedly advised of the high probability of his conviction and the likelihood of receiving a lengthy sentence, commensurate with that he actually received.

Defendant's contention that he sought to accept the plea offer at the onset of trial only confirms the lack of influence that the miscalculated guidelines range had on defendant's earlier decision to reject the plea offer. Nothing, other than the reality of the onset of trial, had changed in the interim, yet defendant asserts he belatedly expressed a desire to accept the plea offer. Unfortunately for defendant, at this late point in the proceeding, as had been made abundantly clear to him by the trial court previously, the trial court would no longer accept the plea offer. In addition, the testimony demonstrated that the prosecutor had rescinded the offer, despite defendant's willingness to offer his acceptance at the point everyone was present for trial. While the trial court was willing to accept the plea agreement at the pretrial hearing, unrebutted evidence indicates the court would not have accepted the agreement at the onset of trial or even that the prosecution's offer remained a viable option. Defendant's willingness to accept the plea offer at the start of trial demonstrates that his acceptance or rejection was not premised on the miscalculated guidelines range.

In sum, defendant's rejection of the plea offer at the pretrial hearing, despite considerable pressure to accept the offer and the available information regarding the considerable benefits of the offer, was not based on the miscalculated guidelines range by defense counsel but rather on defendant's misguided hope for a lower sentence upon conviction of manslaughter. As with any claim of ineffective assistance of counsel, the defendant must establish the factual predicate of his claim. *Douglas*, 496 Mich at 592. In this case, the trial court did not clearly err in its factual determination that counsel's error did not affect the outcome, and defendant has failed to establish the prejudice prong of his claim of ineffective assistance of counsel. *Douglas*, 496 Mich at 592. Consequently, the trial court did not abuse its discretion in denying defendant's motion for relief from judgment based on ineffective assistance of counsel.

Next, defendant argues that his appellate counsel was ineffective for not raising the issue of ineffective assistance of trial counsel. This claim also fails.

"[T]he test for ineffective assistance of appellate counsel is the same as that applicable to a claim of ineffective assistance of trial counsel." *People v Uphaus (On Remand)*, 278 Mich App 174, 186; 748 NW2d 899 (2008). A defendant "must show that his appellate counsel's decision not to raise a claim of ineffective assistance of trial counsel fell below an objective standard of reasonableness and prejudiced his appeal." *Id*. A defendant must "overcome the presumption that his appellate counsel's decision constituted sound strategy." *Id*.; see also *Trakhtenberg*, 493 Mich at 52. It is a reasonable strategy for appellate counsel to "winnow out weaker arguments in order to focus on those arguments that are more likely to prevail." *Uphaus*, 278 Mich App at 186-187, citing *People v Reed*, 449 Mich 375, 391; 535 NW2d 496 (1995). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

As discussed above, defendant has failed to establish his claim of ineffective assistance of trial counsel. That defendant's appellate counsel failed to raise that claim cannot constitute ineffective assistance of appellate counsel because defendant cannot demonstrate that he was prejudiced by his appellate counsel's failure to do so. Thus, although the trial court did not reach this issue, defendant cannot demonstrate good cause for his failure to raise his claim of ineffective assistance of counsel on his direct appeal. The fact that defendant cannot demonstrate good cause under MCR 6.508(D)(3)(a) provides an alternative basis for concluding that the trial court did not abuse its discretion when it denied defendant's motion for relief from judgment. See *People v Goold*, 241 Mich App 333, 342 n 3; 615 NW2d 794 (2000) ("[W]hen a lower court reaches the right result even for the wrong reason, this Court will affirm.").

Last, defendant contends that the trial court committed reversible error because, when it ruled on the motion in the first instance, the trial court based its ruling on defendant's motion for relief from judgment, in part, on the trial court's personal disagreement with the holding of *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993). Defendant's argument is based on his misreading of the record. Although the trial court expressed disagreement with our Supreme Court's decisions permitting trial judges to engage on a limited basis in the plea-bargaining process, the trial court also stated it recognized it must follow the law as decided by higher courts. Specifically, the trial court observed that "its place in the scheme [was] no place" and analyzed defendant's argument "in light of a judicial process which authorizes . . . judicial sentencing bargaining." The trial court did not err.

We affirm.

/s/ Jane E. Markey
/s/ Patrick M. Meter
/s/ Douglas B. Shapiro

-10-