**Lansing, Michigan**

# Opinion

Chief Justice:          Justices:
Robert P. Young, Jr.    Michael F. Cavanagh
                        Marilyn Kelly
                        Stephen J. Markman
                        Diane M. Hathaway
                        Mary Beth Kelly
                        Brian K. Zahra

FILED OCTOBER 26, 2011

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                         No. 142762

RICHARD RANKIN ARMSTRONG,

      Defendant-Appellant.

BEFORE THE ENTIRE BENCH

ZAHRA, J.

In this case, we consider whether the ineffective assistance of defendant's trial counsel in failing to seek the introduction into evidence of cell phone records that would have undermined the complainant's credibility prejudiced defendant, thereby entitling him to a new trial. The Court of Appeals held that, even assuming that defense counsel's performance fell below an objective standard of reasonableness, defendant had failed to show resulting prejudice. For the reasons stated in this opinion, we disagree and instead hold that defense counsel's ineffective assistance prejudiced defendant. Accordingly, in

lieu of granting leave to appeal, we reverse the judgment of the Court of Appeals and remand the case to the Otsego Circuit Court for a new trial.

## I. FACTS AND PROCEDURAL HISTORY

Defendant, a 25-year-old male, was charged with engaging in sexual acts with the complainant, a 15-year-old girl, on two occasions. At the time of the alleged sexual acts, the complainant was living with her adoptive mother, Barbara Kamae, who is actually the complainant's biological grandmother. The complainant's biological mother, Lisa Annise, gave birth to her at a very young age, and her relationship with the complainant is more like that of a sister. Through Lisa's coworker, Donna Eckles, the complainant became acquainted with defendant, who is Donna's half brother. William Eckles is Donna's husband.

Defendant and the complainant met on three occasions in the spring of 2005. The first meeting took place at defendant's residence, where the complainant spent the night with William, defendant, and Titto, one of defendant's friends. William testified that he remained with the complainant and defendant throughout the entire night because he did not trust her. Following this first meeting, the complainant and defendant spoke frequently over the phone.

The complainant and defendant met for the second time a few weeks later at the home of defendant's uncle. Many others were present, including Donna and William. The complainant testified that she and defendant watched a movie in the basement while the others remained upstairs. According to the complainant, she resisted defendant's advances and eventually went upstairs on the pretext of using the restroom. When she returned to lie down on the couch, defendant allegedly removed the cushions to form a

2

bed on the floor. The complainant claimed that while lying down on the cushions, she attempted to maintain her distance from defendant, but he moved closer to her, tried to kiss her, and asked her to undress. When she refused to comply, defendant allegedly removed the complainant's clothes and forced her to engage in oral and vaginal sex, during which defendant allegedly choked her, slapped her, and made threats against her life. The complainant claimed that the intercourse lasted for more than an hour.

William, however, testified that he remained in the basement with defendant and the complainant nearly the entire night because he did not trust her. According to William, he slept on the floor while defendant and the complainant slept on one of the couch's foldout beds. William testified that the three of them went to sleep at the same time. He never heard any sexual activity.

Donna recalled the evening somewhat differently. According to Donna, she and the complainant were supposed to share a bed upstairs. When Donna woke up to find the complainant missing, she went downstairs and found the complainant sitting on the arm of the couch attempting to wake defendant. William was also still in the basement. The complainant refused Donna's request that she return upstairs. Following this second meeting, defendant and the complainant continued to communicate by phone calls and text messages.

Defendant and the complainant met for the third and final time at her home. Defendant brought Titto along, and the three of them talked in the living room while Barbara, who was on heavy prescription medication at the time, slept in the recliner in the same room. The complainant claimed that at some point defendant followed her into her bedroom, shut the door, and ordered her to remove her clothes. As before, defendant

3

allegedly slapped, choked, and threatened the complainant and forced her to submit to oral and vaginal sex over an extended period. The complainant contended that Barbara remained asleep in the living room while the intercourse took place. Afterward, the complainant and defendant dressed, defendant fell asleep in the bed, and the complainant returned to the living room. When defendant awoke, the three of them (defendant, the complainant, and Titto) left to pick up some fast food.

Barbara testified that she awoke in her recliner to find a stranger, Titto, sitting on her couch and then found defendant and the complainant in the bedroom. According to Barbara, she directed defendant to leave the bedroom, and the complainant left with defendant and Titto to pick up the fast food.

The complainant did not see defendant again until trial. She did not mention the alleged rapes to anyone until months after the second alleged rape, when a counselor conducting a background survey asked her whether anyone had ever sexually assaulted her. The complainant, believing that her response would remain confidential, told the counselor that defendant had sexually assaulted her. The counselor reported the allegations to the police.

At trial, attacking the complainant's credibility became central to the defense's case. Most significantly, Lisa, Barbara, and the complainant's stepfather all averred that the complainant had falsely accused her stepfather of raping her in the past. Furthermore, Lisa characterized the complainant as a compulsive liar, and Barbara indicated that the complainant lied and "just want[ed] to get people in trouble."

The cell phone records at issue in this appeal further call into question the complainant's credibility. At trial, the prosecution elicited unequivocal testimony from

4

the complainant that she never communicated with defendant following their third meeting, at which the second rape allegedly occurred, but she acknowledged that defendant continued to try to communicate with her. On cross-examination, defense counsel confronted the complainant with defendant's cell phone records, which revealed two incoming calls from Barbara's cell phone just days after the third meeting. At that point, the complainant admitted calling defendant once or twice from Barbara's phone. However, when confronted with additional cell phone records revealing what defense counsel described as hundreds of incoming calls following the third meeting, coming not from Barbara's cell phone, but from the complainant's cell phone, she unequivocally denied contacting defendant after their third meeting when the second alleged rape occurred. According to the complainant, she wanted no further contact with the man who had so brutally violated her.

Defense counsel then attempted to introduce into evidence defendant's cell phone records rebutting the complainant's testimony, but the prosecution objected for lack of a foundation. The trial court sustained the objection. Defense counsel, who had been practicing law for only eight months at the time, made no further effort to have the records admitted.

During closing argument, the prosecution told the jury that it must disregard the cell phone records because they had not been properly admitted into evidence. The prosecution also told the jury to disregard the complainant's testimony in which she acknowledged making some of the calls to defendant because the documents on which the complainant based her testimony had not been properly admitted. The prosecution even suggested the possibility that defendant or defense counsel had fabricated the cell

5

phone records. Finally, the trial court instructed the jury to disregard evidence that had not been properly admitted and that evidence consists only of sworn testimony and exhibits in evidence.

The jury convicted defendant of two counts of third-degree criminal sexual conduct, MCL 750.520d(1)(a) (victim at least 13 but less than 16 years old), and the trial court sentenced defendant to concurrent terms of 7 to 15 years' imprisonment. In defendant's appeal as of right, appellate counsel moved the Court of Appeals to remand the case for a *Ginther*[1] hearing on the issue of ineffective assistance of counsel. Attached to the motion was an affidavit by defendant's trial counsel acknowledging that he had intended to introduce the cell phone records but failed to subpoena or otherwise make available the custodian of the records to lay the proper foundation to introduce them into evidence. Defense counsel admitted that his failure to pursue introduction of the records "was not a strategic decision, nor did [he] at any time during trial decide that the phone records were not necessary or beneficial to the defense case." The Court of Appeals denied the motion and subsequently affirmed defendant's convictions and sentences.

The Court of Appeals denied reconsideration, and defendant applied for leave to appeal in this Court. We remanded the case to the trial court with instructions to hold a *Ginther* hearing. Defendant's trial counsel, the only witness called at the hearing, testified that he failed to subpoena the custodian of the cell phone records because of the mistaken belief that the business records exception to the hearsay rule did not require a custodian to testify. Instead, defense counsel thought it would be sufficient to have the

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

6

complainant acknowledge her phone number on the statement. He admitted that he intended to introduce the records because they were important to the defense's case, but explained that he became flustered following the prosecution's successful objection and therefore made no further attempt to have the records admitted.

The trial court found that the performance of defendant's trial counsel fell below an objective standard of reasonableness. Nonetheless, it found that defendant did not suffer prejudice because he did not demonstrate a reasonable probability that one more attack on the complainant's credibility would have resulted in his acquittal. Accordingly, the trial court upheld defendant's convictions. The Court of Appeals denied leave to appeal, but this Court remanded the case to the Court of Appeals for consideration as on leave granted.[2]

The Court of Appeals affirmed, concluding that, even assuming defense counsel's failure to pursue admission of the records into evidence constituted ineffective assistance, defendant did not suffer prejudice thereby.[3] Defendant then sought leave to appeal in this Court.

## II. STANDARD OF REVIEW

Whether a defendant received ineffective assistance of trial counsel presents a mixed question of fact and constitutional law.[4] "A judge must first find the facts, then

---

[2] *People v Armstrong*, 485 Mich 1132 (2010).

[3] *People v Armstrong*, unpublished opinion per curiam of the Court of Appeals, issued January 18, 2011 (Docket No. 291979).

[4] *People v Grant*, 470 Mich 477, 484; 684 NW2d 686 (2004).

7

must decide whether those facts establish a violation of the defendant's constitutional right to the effective assistance of counsel."[5] We review the trial court's factual findings for clear error.[6] Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake.[7] We review de novo questions of constitutional law.[8]

## III. ANALYSIS

A defendant must meet two requirements to warrant a new trial because of the ineffective assistance of trial counsel. First, the defendant must show that counsel's performance fell below an objective standard of reasonableness.[9] In doing so, the defendant must overcome the strong presumption that counsel's assistance constituted sound trial strategy.[10] Second, the defendant must show that, but for counsel's deficient performance, a different result would have been reasonably probable.[11]

As a threshold matter, we conclude that defense counsel's performance fell below an objective standard of reasonableness. Failing to pursue the admission of the cell

---

[5] *Id*.

[6] *Id.*

[7] *People v Burrell*, 417 Mich 439, 449; 339 NW2d 403 (1983).

[8] *Grant*, 470 Mich at 485.

[9] *Strickland v Washington*, 466 US 668, 687-688; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994).

[10] *People v Rice (On Remand)*, 235 Mich App 429, 444; 597 NW2d 843 (1999).

[11] *Strickland*, 466 US at 694-696.

phone records into evidence was not a matter of sound trial strategy. Defense counsel himself testified at the *Ginther* hearing that the records were important and that the only reason he failed to pursue their admission was that he mistakenly believed no additional steps were required for their admission and became flustered when the prosecution successfully objected to their admittance because of the lack of a foundation. At the conclusion of the *Ginther* hearing, the trial court found that failing to pursue the admission did not constitute sound trial strategy, a finding that the prosecution never appealed. We decline to entertain the prosecution's challenge to the trial court's finding at this late stage. Moreover, the prosecution's argument that failing to pursue admission of the records constituted sound trial strategy wholly lacks merit. Admission of the records would have caught the complainant in a lie. Any attorney acting reasonably would have moved for the records' admission, particularly when, as here, attacking the complainant's credibility offered the most promising defense strategy.

Thus, the critical question is one of prejudice. In answering this question, we hold that the Court of Appeals clearly erred by affirming the trial court's finding of no prejudice. The reasoning in the Court of Appeals' opinion was flawed in several respects.

First, the Court of Appeals concluded that no prejudice resulted from defense counsel's failure to have the cell phone records admitted because the complainant's credibility had been "thoroughly impeached . . . ."[12] This reasoning was clearly erroneous. The defense's whole theory of the case was that the complainant had falsely

---

[12] *Armstrong*, unpub op at 3.

9

accused defendant of rape. The attacks on the complainant's credibility at trial were inconclusive, providing mere "he said, she said" testimony contradicting the complainant's version of the events. The other credibility attacks revealed that the complainant had falsely accused her stepfather of rape on a prior occasion and that she habitually lied. Although unquestionably significant, such attacks had less of a tendency to undermine the complainant's credibility than the cell phone records, which would have provided documentary proof strongly suggesting that the complainant lied to *this* jury regarding her actions in connection with the alleged rapes in *this* case.

Further, the prosecution elicited testimony from the complainant that defendant violently raped her and made threats against her life and that she had absolutely no wish to call or speak to defendant after having undergone such a harrowing experience. The cell phone records revealing frequent communication with defendant following the alleged rapes would have cast serious doubt on the substance of her accusations. If defendant violently raped the complainant on two occasions and the complainant felt brutally violated in the way that she described, then one must question why she reached out to defendant through text messages and phone calls when severing all lines of communication would have been a far more appropriate response under the circumstances. Given the telephone records' significance, a reasonable probability exists that this additional attack on the complainant's credibility would have tipped the scales in favor of finding a reasonable doubt about defendant's guilt.

Second, the Court of Appeals clearly erred when it reasoned that, because MCL 750.520d(1)(a) is a strict liability statute under which the complainant's consent was irrelevant, introducing the cell phone records could have resulted in acquittal *only* if they

10

showed the absence of a sexual relationship.[13]  Although the issue of consent is indeed

irrelevant under MCL 750.520d(1)(a),[14] quite obviously, defense counsel did not seek to

admit the records to establish that the alleged intercourse was consensual.  Rather,

defense counsel sought to establish that the complainant's allegations that intercourse—

forcible or otherwise—occurred at all lacked credibility because she falsely testified that

she had not called or communicated with defendant after the alleged rapes.  We conclude

that a reasonable probability exists that the cell phone records would have convinced the

jury to discredit the complainant's accusations.

Third, the Court of Appeals clearly erred by concluding that the cell phone records

could have damaged defendant's case because they might have emphasized the

seriousness of defendant's relationship with a 15-year-old girl, casting him in a poor

light.  This seems to suggest that the Court of Appeals believed that defense counsel

chose not to admit the records as a matter of trial strategy.  Yet it stated earlier in its

opinion that the failure to pursue admission of the records was *not* a matter of trial

strategy, revealing inconsistency in its reasoning.[15]  The trial court, following a hearing

on the matter, found that defense counsel's failure to pursue admission of the records fell

---

[13] *Id.*

[14] "[T]here is no issue of consent in a statutory rape charge because a victim below the age of consent is conclusively presumed to be legally incapable of giving his or her consent to sexual intercourse."  *People v Cash*, 419 Mich 230, 247-248; 351 NW2d 822 (1984).

[15] "[D]efense counsel's failure to have defendant's phone bill admitted into evidence was based on an erroneous belief that the complainant's testimony alone could lay the foundation for admission of the records and not sound trial strategy . . . ."  *Armstrong*, unpub op at 2.

below an objective standard of reasonableness and did not constitute sound trial strategy. The prosecution failed to appeal this finding. Further, even assuming that the evidence would have worked slightly against defendant, it does not follow that the evidence would not also have worked so significantly against the complainant as to destroy her credibility and result in defendant's acquittal. Notwithstanding that the cell phone records revealed defendant's frequent communication with a teenage girl, any attorney acting reasonably would have moved for the records' admission given that they offered powerful evidence of the complainant's lying to the jury in a case that essentially boiled down to whether the complainant's allegations of rape were true.

Finally, the Court of Appeals clearly erred when it reasoned that it made no difference whether the jury saw the cell phone records since it heard their contents read into evidence by the complainant. The Court of Appeals seemed to ignore that the complainant acknowledged only a fraction of the numerous communications revealed in the cell phone records. Further, according to the trial court's instruction, the jury was to disregard the cell phone records because they had not been properly admitted. We presume that a jury follows its instructions.[16] Moreover, even assuming that the jury considered the portion of the cell phone records read into evidence, the jury also heard from the prosecution that defendant or defense counsel might have fabricated the records. We disagree with the Court of Appeals that instructing the jury that the attorneys' statements and arguments are not evidence cured such a significant and damning accusation.

---

[16] *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998).

## IV.  CONCLUSION

For the foregoing reasons, we hold that the failure of defendant's trial counsel to pursue the introduction of the cell phone records into evidence not only fell below an objective standard of reasonableness, but also prejudiced defendant.  Accordingly, we reverse the judgment of the Court of Appeals and remand the case to the Otsego Circuit Court for a new trial.

Brian K. Zahra
Robert P. Young, Jr.
Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly

13