# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JERMAINE LEON JONES,

        Defendant-Appellant.

UNPUBLISHED
October 19, 2017

No. 333919
Calhoun Circuit Court
LC No. 2016-000145-FC

Before: BOONSTRA, P.J., and METER and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial conviction of first-degree premeditated murder, MCL 750.316. The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to life imprisonment without the possibility of parole. We affirm.

Defendant was convicted for the August 9, 2015, shooting of Breon Williams in the Park Hill neighborhood of Battle Creek. On August 8, 2015, defendant went with Jlin Cannon, Dezmen Jones, and Kyle Epps to a local nightclub, where he had a short, unfriendly interaction with Williams. The atmosphere made Epps uncomfortable, and Epps left. Defendant later left the nightclub with Dezmen and Cannon and drove his Chevy Tahoe to Epps's apartment, where he asked Epps if he could borrow Epps's tan Bonneville so that the men could search for Williams unrecognized. Defendant told Epps that he had a gun[1] and stated that "it would be one of theirs before it's one of his family members." Epps allowed defendant to borrow his car, and Cannon drove the four men to the Park Hill neighborhood. Initially, the search for Williams was unsuccessful, so Cannon parked the car and the men sat in the car for 10 to 15 minutes. During this time, defendant said, "If we can't find Breon, we find somebody that's close to him." When the men resumed their search, Cannon spotted Williams near the sidewalk, leaning over a car and speaking through the passenger-side window. Cannon pulled up to Williams's location, and Dezmen fired five or six shots at Williams from the rear passenger side of Epps's car. Williams died from a single gunshot wound to the chest.

---

[1] Epps testified that defendant told him that he "had a gun" and later stated that defendant told him that "he had a gun in the car . . . ."

Defendant argues that his conviction was not supported by sufficient evidence. We review de novo claims of insufficient evidence, viewing the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011).

Defendant was convicted of first-degree murder under an aiding-and-abetting theory. MCL 767.39 establishes criminal liability for individuals who assist or encourage a principal in the commission of a crime. *People v Robinson*, 475 Mich 1, 6; 715 NW2d 44 (2006). The Michigan Supreme Court has identified three elements necessary for conviction under an aiding-and-abetting theory:

> (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that the defendant gave aid and encouragement. [*Id*. (alteration marks, quotation marks, and citation omitted).]

Defendant argues that the prosecution failed to present evidence sufficient for the jury to find the second and third elements of aiding and abetting. Defendant does not dispute that Dezmen shot and killed Williams.

Regarding the second element, aiding and abetting includes any type of assistance given to the perpetrator of a crime by words or deeds that are intended to encourage, support, or incite the commission of the crime. *People v Palmer*, 392 Mich 370, 378; 220 NW2d 393 (1974). The precise amount of aid, advice, or encouragement is not material if it had the effect of inducing the crime. *Id*.

Epps testified that defendant called him after leaving the club and asked to come to his apartment and speak with him. Cannon testified that defendant then drove to Epps's apartment to switch vehicles before the men proceeded to the Park Hill neighborhood. On the way to Epps's apartment, defendant recited apparent threats Williams made at the club. Epps testified that defendant, upon arriving at his apartment, asked to borrow his car so that they could search for Williams unrecognized. Defendant informed Epps that he had a gun and told Epps that "it would be one of theirs before it's one of his family members." Epps also testified that, on the way to the Park Hill neighborhood, defendant aided the search for Williams by giving directions to the driver. Epps testified that defendant said, "If we can't find Breon we'll find somebody that's close to him."

Defendant argues that the evidence was insufficient to prove that he did anything more than simply be "present when the shots were fired." "Mere presence," even with knowledge that an offense will be committed, is insufficient to establish that a person aided and abetted a crime. *People v Wilson*, 196 Mich App 604, 614; 493 NW2d 471 (1992). However, when viewed in the light most favorable to the prosecution, the testimony of Epps and Cannon identified acts and statements by defendant that a rational trier of fact could have found beyond a reasonable doubt assisted or encouraged Dezmen in the commission of the crime. See *Palmer*, 392 Mich at 378.

Regarding the third element, an aider and abettor's mental state may be "inferred from all the facts and circumstances" surrounding an event. *People v Carines*, 460 Mich 750, 758; 597 NW2d 130 (1999) (quotation marks and citations omitted). Factors that may be considered include the defendant's close association with the principal, his act of fleeing the crime scene with the principal, and his participation in planning and committing the crime. See *id*.

Epps testified that Dezmen was defendant's nephew. On August 8, 2015, the four men spent the day and evening together; they were together at Epps's baby shower, The Arbors apartment complex, and The Music Factory. At The Music Factory, defendant and Williams had what Epps described as a troublesome interaction. Cannon testified that, on the way to Epps's apartment, defendant recited threats that Williams had made against Dezmen that night. Epps testified that defendant told him that "it would be one of theirs before it's one of his family members" and that he had a gun. Defendant expressed that he needed to borrow Epps's car because his was too recognizable. Although defendant did not explicitly tell Epps that they were going to kill Williams, Epps inferred "that's what they wanted to use my car for." Cannon testified that he "didn't know" that there was a gun in the car when the men went looking for Williams, but he "figured [there] probably was[.]" Defendant stayed with the men in Epps's Bonneville through the commission of the offense, and then fled with them after Williams's murder. Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that defendant either intended the murder of Williams or knew of Dezmen's intent at the time he provided aid and encouragement.

In a Standard 4 brief,[2] defendant argues that he was denied his constitutional right to an impartial jury drawn from a fair cross section of the community. Because defendant did not preserve this issue by raising it before the jury was sworn and empaneled, *People v Dixon*, 217 Mich App 400, 404; 552 NW2d 663 (1996), we review the issue for plain error affecting the substantial rights of defendant, *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

"The Sixth Amendment of the United States Constitution guarantees a defendant the right to be tried by an impartial jury drawn from a fair cross section of the community." *People v Bryant*, 491 Mich 575, 595; 822 NW2d 124 (2012). To establish a prima facie violation of the fair-cross-section requirement, the defendant must show

> (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process. [*Id*. at 597 (quotation marks and citations omitted).]

This Court's review is limited to the lower-court record. See *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002). Therefore, we do not consider the affidavit

---

[2] See Michigan Supreme Court Administrative Order 2004-6, Standard 4.

that defendant presented with his Standard 4 brief. There is nothing in the record to indicate the racial or ethnic makeup of the jury venire. Accordingly, the record does not support defendant's claim that there were no African-Americans or other minorities on the jury venire. There is no plain violation of defendant's right to an impartial jury drawn from a fair cross section of the community. *Carines*, 460 Mich at 763.

Defendant also argues that he was deprived of effective assistance of counsel because defense counsel did not object to the composition of the jury venire. Because defendant did not file a motion in the trial court for a new trial or an evidentiary hearing with regard to this issue, our review of defendant's claim is limited to mistakes apparent in the lower-court record. *People v Solloway*, 316 Mich App 174, 188; 891 NW2d 255 (2016).

To establish a claim of ineffective assistance of counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011). A defendant must prove the factual predicate for his claim of ineffective assistance of counsel. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). The factual predicate for defendant's claim is the exclusion of African-Americans and other minorities from the jury venire. But, as already stated, there is no evidence in the record to support the claim. Further, defense counsel cannot be faulted for failing to raise an objection or motion that would have been futile. *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998). Because defendant has not demonstrated the factual predicate of his claim, he has not shown that defense counsel's objection to the jury venire would not have been futile.[3]

Affirmed.

/s/ Mark T. Boonstra
/s/ Patrick M. Meter
/s/ Michael F. Gadola

---

[3] Further, we reject defendant's one-sentence request, made in the "conclusion" section of his Standard 4 brief, that we remand this case for fact-finding.