*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

FREDERICK WILLIAM CORDS, JR.,

        Defendant-Appellant.

UNPUBLISHED
June 15, 2023

No. 357246
Charlevoix Circuit Court
LC No. 15-009612-FH

Before: CAMERON, P.J., and MURRAY and GADOLA, JJ.

PER CURIAM.

Following a jury trial, defendant, Frederick William Cords, Jr., was convicted of illegally obtaining $50,000 or more but less than $100,000 from a vulnerable adult in violation of MCL 750.174a(6)(a). The trial court denied defendant's motion for relief from judgment. Defendant appeals as on leave granted, and we affirm.

## I. FACTUAL BACKGROUND

The factual background of this case is amply discussed in this Court's opinion in *People v Cords*, unpublished per curiam opinion of the Court of Appeals, issued May 22, 2018 (Docket No. 335865). The circumstances relevant to this appeal all occurred before trial.

Defendant accepted substantial amounts of money from Merlin "Jack" Roberts, a man in his eighties, who at that time lived alone and was able to generally care for himself. Defendant was charged with illegally obtaining $20,000 or more but less than $50,000 from a vulnerable adult, a ten-year felony contrary to MCL 750.174a(5)(a). At defendant's preliminary examination with his court-appointed attorney, the prosecution offered that, if defendant pleaded guilty to the lesser charge of illegally obtaining between $1,000 and $20,000 from a vulnerable adult, he would be convicted of a five-year felony without any habitual-offender enhancement. After an opportunity to speak with his attorney, defendant indicated that he wished to accept the offer.

The district court, defense counsel, and the prosecutor all questioned the defendant in an attempt to establish a factual basis for the plea, but defendant could not admit to the elements of the crime. When the district court asked defendant if he knew the victim to be a vulnerable adult,

defendant stated that he had not believed the victim to be vulnerable. Defense counsel read the definition of "vulnerable" from the statute and defendant eventually agreed the victim was vulnerable due to his advanced age. However, when defense counsel asked defendant if he took money from the victim, defendant stated that they were loans and he had an honest intention to repay the money. The prosecution and court then inquired further, but defendant stated he intended to pay the money back each and every time and that he could not "sit here and lie." The district court did not accept the plea and proceeded with the preliminary examination. Upon hearing the evidence, the district court bound the defendant over to circuit court on the enhanced charge of illegally obtaining at least $50,000 but less than $100,000 from a vulnerable adult, a fifteen-year felony in violation of MCL 750.174a(6).

At the plea hearing before the circuit court, defendant was again offered the plea agreement to the lesser charge. Defendant's court-appointed attorney and the prosecution engaged in a lengthy discussion regarding a future restitution hearing because the defendant would not stipulate to the amount of criminal restitution the prosecution was seeking. Afterwards, defendant indicated he was willing to accept the offer and plead guilty. The following exchange occurred between defendant and the court:

> *Court*: … Can you tell me what you did to make you guilty of this charge?
>
> *Defendant*: I borrowed money from Mr. Roberts in excess of one thousand dollars, and I did not pay it back, and that was pretty much for enrichment of myself.
>
> *Court*: Okay. And you were aware that he was a vulnerable adult—adult at that time?
>
> *Defendant*: Yes.
>
> *Court*: All right….

Both defense counsel and the prosecution agreed that the elements had been established and the circuit court accepted the plea.

However, on the date set for defendant's sentencing hearing, defendant retained an attorney, Bryan C. Klawuhn, who substituted as counsel and moved to withdraw defendant's plea. Mr. Klawuhn argued that defendant could not stipulate that the victim was vulnerable, and Klawuhn "believe[d] there's a culpable [*sic*] argument that in fact no crime was committed . . . ." The circuit court explained to defendant that if he withdrew his plea, he would be facing a fifteen-year felony and "not the five-year felony that you pled to pursuant to the plea agreement," and that life in prison would be the maximum possible penalty because defendant was a fourth-offense habitual offender. Defendant indicated he understood and the court allowed defendant to withdraw his plea.

The case proceeded to a jury trial. The trial lasted two days, in which defense counsel did not put on any witnesses or evidence. At the close of the prosecution's proofs, defense counsel moved for a directed verdict of acquittal. The trial court denied that motion. In his closing argument, defense counsel argued that defendant had paid some of the money back, he had

intended to pay back the rest, and that the victim was not vulnerable. The jury found defendant guilty of illegally obtaining $50,000 or more but less than $100,000 from a vulnerable adult.

The trial court sentenced defendant as a fourth-offense habitual offender, per MCL 769.12, to 10 to 20 years' imprisonment. Defendant appealed as of right, and this Court affirmed his conviction. *People v Cords*, unpublished per curiam opinion of the Court of Appeals, issued May 22, 2018 (Docket No. 335865). Defendant then filed a motion for relief from judgment in the trial court under MCR 6.502, asserting, *inter alia*, that he received ineffective assistance of trial counsel. Defendant asserted that Mr. Klawuhn provided ineffective assistance by misleading him about the legal definition of "vulnerable adult." Defendant requested an evidentiary hearing under *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973), and afterward to vacate his conviction. The trial court denied defendant's motion without holding a *Ginther* hearing. Defendant appealed, and this Court denied his delayed application for leave to appeal. Defendant applied for leave to appeal to the Michigan Supreme Court, which remanded to this Court to consider the application on leave granted. *People v Cords*, ___ Mich ___, ___ (2022) (Docket No. 163540). This Court then remanded to the trial court to hold an evidentiary hearing on defendant's motion.

In an affidavit submitted with his application for leave to appeal to the Michigan Supreme Court in 2018, defendant stated that he withdrew his guilty plea because Mr. Klawuhn advised him on "multiple occasions that it is impossible for a person to be a vulnerable adult under the law if that person lives independently at the time of the alleged fraud." Further, defendant alleged that "Mr. Klawuhn stated that he could guarantee that the trial court would grant a Motion for a Directed Verdict of Acquittal after it had heard the prosecution's case."

At the *Ginther* hearing, defendant, his initial court-appointed counsel, and Mr. Klawuhn each testified. Defendant first explained why he sought Mr. Klawuhn's representation: "I asked him if he could keep me in the county jail level instead of going to prison." Defendant stated that Mr. Klawuhn then requested a copy of defendant's preliminary examination transcript before agreeing to representation. After reviewing the transcript, Mr. Klawuhn gave defendant his advice. Defendant recalled Mr. Klawuhn's advice as, "[h]e guaranteed me there was no crime committed. The statute's very clear and there is no crime committed. You cannot live independently and be considered vulnerable." Defendant retained Mr. Klawuhn, who subsequently filed a motion to dismiss. The trial court denied the motion. After the motion to dismiss hearing, defendant met with Mr. Klawuhn on the courthouse steps and he again "guaranteed" that defendant would be acquitted on the charges. Defendant insisted that he never told Mr. Klawuhn he wanted out of the plea agreement. Defendant explained that he withdrew his plea because Mr. Klawuhn "guaranteed me there was no crime committed …."

Mr. Klawuhn's testimony at the *Ginther* hearing was markedly different than defendant's. Klawuhn testified that he never guaranteed defendant would be acquitted because he doesn't make guarantees when it comes to jury trials. Klawuhn further testified that defendant "[s]aid he was coerced into taking a plea that he wasn't guilty of the crime that he pled guilty to, and he didn't want to pay restitution or—or be sentenced to prison for something he didn't do" and that is why defendant retained Mr. Klawuhn. With regards to the basis for withdrawing the plea, Mr. Klawuhn testified that he believed there was a basis to withdraw the plea because defendant said that he

"didn't intend to permanently deprive Mr. Roberts of the money" and "he believed Mr. Roberts was not a vulnerable adult, that he was just old."

In his affidavit, Mr. Klawuhn stated that he informed defendant of the definition of "vulnerable adult" and indicated that defendant's prior attorney informed him of the definition as well. Mr. Klawuhn contends that he advised defendant that living independently is only one of many factors involved in determining whether someone is a vulnerable adult. Lastly, Mr. Klawuhn insisted that he never advised defendant it was "impossible for a person to be a vulnerable adult under the law if a person lives independently" and that defendant seemed to understand that it was the jury who would determine if the victim was a vulnerable adult.

Following the *Ginther* hearing, the circuit court found that defendant had hired Mr. Klawuhn to withdraw his plea because defendant believed that he was innocent. The court found that defendant's testimony at the *Ginther* hearing was not credible. Considering defendant's previous testimony during his plea, the restitution hearing, and the plea withdrawal hearing, the court found that "[i]t is very clear that the defendant has never believed he committed the crime alleged in this case." The court further found that counsel had not provided ineffective assistance because it had been "neither objectively unreasonable nor unprofessional for an experienced criminal defense attorney to conclude that there was an excellent chance for an acquittal in a case with these facts." The court was satisfied that defendant had made an informed decision to withdraw his guilty plea and that Mr. Klawuhn's representation was not deficient. Accordingly, the court denied defendant's motion for relief from judgment.

## II. STANDARDS OF REVIEW

A defendant's claim that counsel provided ineffective assistance is a mixed question of fact and law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). "[T]his Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *Id*. at 47. A finding is clearly erroneous if this Court is left with a definite and firm conviction that the trial court made a mistake. *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011).

This Court reviews a trial court's denial of a motion for relief from judgment for an abuse of discretion and reviews the findings of fact supporting the decision for clear error. *People v Clark*, 274 Mich App 248, 251; 732 NW2d 605 (2007). "The trial court abuses its discretion when its decision falls outside the range of principled outcomes or when it erroneously interprets or applies the law." *People v Lane*, 308 Mich App 38, 51; 862 NW2d 446 (2014).

## III. ANALYSIS

Defendant argues that his trial counsel provided ineffective assistance by advising him that he had not committed a crime, which caused him to move to withdraw his plea of guilty to a lesser offense. The circuit court did not clearly err when it found that trial counsel exercised reasonable professional judgment and defendant chose to proceed to trial despite knowing the risks.

A criminal defendant has a fundamental right to the effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. The right to effective assistance of counsel extends to plea

-4-

proceedings. *People v White*, 331 Mich App 144, 148 (2020). To establish that the defendant received the ineffective assistance of counsel, the defendant first must show that defense counsel's performance fell below an objective standard of reasonableness. *Id*. at 149; *Strickland v Washington*, 466 US 668, 688; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Second, the defendant must establish prejudice by showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *White*, 331 Mich App at 149-150; *Strickland*, 466 US at 694. If a plea agreement has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept that offer. *Lafler v Cooper*, 566 US 156, 168; 132 S Ct 1376; 182 L Ed 2d 398 (2012). "If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence." *Id*. However, a defendant who has maintained his innocence may be unable to demonstrate that, but for counsel's advice, the result of the proceeding would have been different. See *People v Douglas*, 496 Mich 557, 597-598; 852 NW2d 587 (2014).

In establishing whether defense counsel's performance fell below an objective standard of reasonableness, the defendant must overcome the strong presumption that defense counsel's performance constituted sound trial strategy. *Trakhtenberg*, 493 Mich at 52. Mistaken advice may fall below an objective standard of reasonableness. *Douglas*, 496 Mich at 593. Defense counsel's performance may be deficient when counsel advised the defendant to reject a plea offer on the ground that the defendant could not be convicted at trial. See *Lafler*, 566 US at 163 (recognizing that the parties agreed the advice constituted ineffective assistance).

In this case, defendant testified that he had sought out substitute counsel for the purposes of sentence mitigation but that counsel ultimately guaranteed him that he had not committed a crime and would be acquitted. Upon hearing this advice, defendant withdrew his guilty plea. However, counsel testified that defendant had hired him to withdraw his plea and take the case to trial because he believed he was innocent. Defense counsel testified that he never guaranteed defendant would be acquitted and would never do so because jury trials are unpredictable.

Defense counsel further testified that he informed defendant of the definition of "vulnerable adult." Defense counsel explained to defendant that multiple factors would be part of a jury's determination of the vulnerability element, including the ability to drive, shopping and cleaning independently, and if the person had ever been adjudicated a "vulnerable adult."

Defendant argues that his case is analogous to *Lafler*, but this case is clearly distinguishable. In *Lafler*, the parties conceded that counsel's advice to reject a plea offer fell below an objective standard of reasonableness because it was based on inaccurate advice. In this case, no party has conceded that counsel's performance was deficient. Instead, the circuit court found that defendant's testimony about his reason for hiring counsel was not credible and that counsel did not provide deficient advice by concluding that there was an excellent chance for acquittal considering the facts of defendant's case. We are not definitely and firmly convinced that the circuit court's findings were mistaken. In this case, defendant consistently maintained that the monies he received from the victim were loans and that he did not believe the victim to be vulnerable. From the preliminary examination to the jury trial, defendant insisted that he intended to pay the money back and, on every occasion except his guilty plea, insisted that he did not believe the victim was vulnerable. Even when the circuit court accepted defendant's guilty plea, defendant

insisted that the monies were loans that he "did not pay back." The record supports the circuit court's finding that defendant specifically hired substitute counsel to withdraw his plea and proceed to trial because he believed that he was innocent. Therefore, defendant has not established that he received ineffective assistance of counsel.

Because defendant has not established that counsel exercised unreasonable professional judgment, we will not analyze in detail whether defendant was prejudiced. See *People v Reed*, 449 Mich 375, 400-401; 535 NW2d 496 (1995) (stating that a claim may be rejected when either prong of the *Strickland* test has not been satisfied). However, we note that a defendant who has maintained his innocence may be unable to demonstrate that there is a reasonable probability that he would have accepted a plea offer. See *Douglas*, 496 Mich at 597-598. Because defendant has maintained his innocence throughout the trial court proceedings, with the exception of the plea hearing, it would be unlikely that he could prove prejudice.

We conclude that the circuit court did not abuse its discretion by denying defendant's motion for relief from judgment because it did not err in determining that substitute counsel provided defendant with effective assistance.[1]

We affirm.

/s/ Thomas C. Cameron
/s/ Christopher M. Murray
/s/ Michael F. Gadola

---

[1] We note that defendant raised additional procedural issues in his initial appellate brief. However, because the relief that defendant sought was a remand for a *Ginther* hearing or a determination regarding whether he received the effective assistance of counsel, and defendant ultimately received a *Ginther* hearing and determination, these procedural issues are now moot. See *People v Richmond*, 486 Mich 29, 34-35; 782 NW2d 187 (2010), amended 486 Mich 1041 (2010).