*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v

JOHNATHAN ANDREW SHANNON,

   Defendant-Appellant.

UNPUBLISHED
July 18, 2024

No. 363035
Kent Circuit Court
LC No. 21-000550-FH

Before: CAMERON, P.J., and M. J. KELLY and YATES, JJ.

PER CURIAM.

Defendant, Johnathan Shannon, appeals as of right his jury trial conviction of fourth-degree criminal sexual conduct, MCL 750.520e(1)(a). The trial court sentenced Shannon as a fourth-offense habitual offender, MCL 769.12, to serve 3 to 15 years in prison and ordered him to comply with the Sex Offender Registration Act (SORA), MCL 28.721 *et seq*. For the reasons stated in this opinion, we reverse and remand for a new trial.

## I. BASIC FACTS

In October 2020, Shannon asked the complainant, a fifteen-year-old girl, to come over to his home to wash his dishes. Although Shannon was not related to her, the complainant referred to him as "uncle" and had previously cleaned his home for him in exchange for money. On this occasion, the complainant told Shannon that she would do the dishes, but she asked if he could first give her a ride to her boyfriend's home. Shannon agreed. He picked her up around midnight and dropped her off at her boyfriend's place for approximately one hour. Shannon then drove her to his home, where they talked for around 30 minutes before she started washing the dishes.

The complainant stated that within five minutes, Shannon came up behind her and grabbed and squeezed her buttocks with both hands while she was facing the sink. She immediately started crying and asked him to take her home. She testified that Shannon told her that he had taken "a pill" and he blamed "the drugs" for his actions. After unsuccessfully trying to secure an alternative ride home for the complainant, Shannon drove her home. He apologized repeatedly on the way, but the complainant just looked out the window and cried. When she got home, she went into the bathroom and continued crying.

The complainant's mother found her in the bathroom. She described that the complainant was "crying like a cry I've never heard her cry before ever in her life." At first, she was crying so hard that her mother could not "get one word out of her." After she calmed, she disclosed to her mother what had happened. The complainant's mother contacted Shannon, but he denied the allegations and stated that the complainant was lying. There is conflicting evidence as to whether the complainant wanted the incident to be reported. Regardless, the record reflects that her mother did not report it.

A few days or weeks after the incident, the complainant texted a friend who was familiar with Shannon. She told her friend what had happened, and her friend's family contacted the police. The complainant was interviewed at the Children's Advocacy Center (CAC) regarding her allegations. Shannon, however, was not interviewed because he had retained a lawyer in relation to a different incident. At trial, the complainant's mother testified that she knew Shannon because he was a drug dealer who had sold her drugs, including heroin.

Following a jury trial, Shannon was convicted as charged. This appeal follows.

## II. EVIDENTIARY ERRORS

## A. STANDARD OF REVIEW

Shannon first argues that he was denied his constitutional right to a fair trial because there were several evidentiary errors. He also contends that the prosecutor committed misconduct in using the improperly admitted evidence during closing argument in order to bolster the complainant's credibility and impugn his credibility. This issue is not preserved for appellate review because Shannon's lawyer did not object to the alleged errors at trial. See *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Unpreserved issues are reviewed for plain error. *People v Burkett*, 337 Mich App 631, 635; 976 NW2d 864 (2021). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error affects a defendant's substantial rights if it "affected the outcome of the lower court proceedings." *Id*. The defendant bears the burden of establishing that a plain error occurred. *Id*. Moreover, "[t]he reviewing court should reverse only when the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Thorpe*, 504 Mich 230, 252-253; 934 NW2d 693 (2019).

Alternatively, Shannon argues that his lawyer provided constitutionally ineffective assistance by failing to object to the evidentiary errors. Although Shannon preserved this issue by moving for a new trial on the basis that his lawyer had provided ineffective assistance, the court denied the motion. Accordingly, our review is limited to mistakes that are apparent on the record. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). "A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *Id*.

## B. ANALYSIS

## 1. THE COMPLAINANT'S PRIOR CONSISTENT STATEMENTS

At trial, the prosecution presented evidence that the complainant had first disclosed to her mother what had happened. The details of her disclosure were not, however, admitted into evidence. Next, the complainant disclosed what Shannan had done to her to a friend via Facebook messenger. Although the complainant was not asked about the substance of the messages, Shannon's lawyer stipulated to admit as an exhibit a redacted copy of the messages. The unredacted portions of the message included the complainant's statements that Shannon had "touched her," that she was cleaning dishes when he grabbed her "ass," and that she wanted Shannon to be "locked up" for what he had done to her. At one point, she stated in the messages that "we definitely gon get this mf locked up." Finally, the prosecution elicited testimony that the complainant had been interviewed at the CAC and had made disclosures. The details of what she disclosed were not fully admitted into the record; however, the complainant testified that she told the CAC interviewer the same thing that she had told the jury about what had happened with Shannon. She also testified that she was telling the truth when she made the disclosures to the CAC interviewer. Additionally, both the prosecution and Shannon's lawyer questioned the complainant on a limited basis as to specific statements she had made about the events leading up to the incident and those preceding it.

On appeal, Shannon first argues that the Facebook messages contained inadmissible hearsay. In response, the prosecution correctly points out that any error related to the admission of the Facebook messages was waived by Shannon's lawyer when she stipulated to the admission of the messages. "Waiver has been defined as 'the intentional relinquishment or abandonment of a known rights.' " *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000), quoting *Carines*, 460 Mich at 762 n 7. The waiver of an issue related to the admission of evidence may be effectuated by a lawyer's actions on behalf of a defendant. *People v Buie*, 491 Mich 294, 305-306; 817 NW2d 33 (2012). Thus, by affirmatively stipulating to the admission of the messages, Shannon's lawyer waived any issue related to their admissibility.

Notwithstanding that waiver, Shannon may still prevail on his challenge to the Facebook messages by showing that his lawyer provided constitutionally ineffective assistance by stipulating to the admission of the text messages. To prevail on a claim that his or her lawyer provided ineffective assistance, a defendant bears the burden of establishing (1) that the lawyer's performance was deficient, i.e., that it "fell below an objective standard of reasonableness," and (2) that, but for that deficient performance, the defendant was prejudiced. *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011). To establish prejudice, the defendant must show that, but for his lawyer's "deficient performance, a different result would have been reasonably probable." *Id*. "Effective assistance is strongly presumed, and the defendant bears the heavy burden of proving otherwise." *People v Haynes*, 338 Mich App 392, 429; 980 NW2d 66 (2021) (quotation marks and citation omitted).

-3-

At the time of Shannon's trial, MRE 801(c)[1] defined hearsay as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Here, the prosecutor argues that the text messages were not offered to show the truth of the matter asserted, i.e., that Shannon had grabbed the complainant's buttocks or that she was going to get him "locked up." Instead, the prosecutor claims that the messages were admitted to explain the reason why the incident was reported to the police. In support, the prosecutor points out that the complainant did not testify as to the content of the messages during her direct examination. Rather, she only testified that she had reached out to her friend because her friend "would be someone who would listen." The prosecution argues that, as a result, the messages did not meet the definition of hearsay, so any objection would have been futile. See *People v Zitka*, 335 Mich App 324, 341; 966 NW2d 786 (2020) (quotation marks and citation omitted) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

The record, however, does not support that contention. During his closing argument, the prosecutor first argued to the jury that the complainant's testimony did not need to be corroborated. However, he then pointed out the aspects of her testimony that were corroborated. That included the Facebook messages between the complainant and her friend, which the prosecutor discussed at length. The prosecutor highlighted the complainant's statement that Shannon "touched" her two weeks before she had sent the messages. He pointed out that the complainant believed that Shannon deserved "to be locked up for what he did to" her. Finally, he argued that:

> [The complainant] explains exactly what she told all of you had happened. "I was cleaning for him for money, and when I was doing the dishes, he grabs my ass." Consistent with what she told her mother. She tells [her friend] this [is] what happened, and these are the facts. As simple as they may be.

The prosecutor's argument makes clear that he was not using the Facebook messages simply to explain the reason why the police were contacted. Rather, he used them to establish the truth of the matter that the complainant had asserted. As a result, the statements are hearsay under MRE 801(c). Further, the statements do not meet the definition of non-hearsay set forth in MRE 801(d) because they are not a prior inconsistent statement by the complainant, they are not a prior consistent statement admitted to rebut an allegation of recent fabrication, and they are not a statement of identification made after the complainant perceived Shannon. Nor has the prosecutor identified any hearsay exception under which it would be admissible. Therefore, under MRE 802, the statements in the text messages were inadmissible hearsay.

Generally, a lawyer's decision regarding what evidence to admit at trial is matter of trial strategy, which this Court will not second-guess with the benefit of hindsight. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). Yet, there is nothing in the record suggesting that the decision to stipulate to the admission of the text messages was part of the defense trial strategy.

---

[1] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See ADM File No. 2021-10, 512 Mich lxiii (2023). We rely on the version of the rules in effect at the time of trial.

Indeed, although a defense lawyer may strategically consent to the admission of prior disclosures by a witness when parts of that disclosure are inconsistent with the allegations at trial, the text messages at issue here were wholly consistent with the testimony from the complainant. Thus, there were no inconsistencies in the text messages for the defense to highlight in order to call the complainant's credibility into question. We, therefore, conclude that Shannon's lawyer provided deficient assistance when she stipulated to the admission of the text messages.

Having determined that the messages were inadmissible, we turn to Shannon's contention that the Facebook messages, in connection with the complainant's disclosure to her mother and to the CAC interviewer, were improperly used by the prosecutor to bolster the credibility of the complainant. Again, the prosecutor argued that the complainant's testimony did not need to be corroborated. However, he then asserted that it was corroborated because her testimony was consistent with her disclosures to her mother, to her friend via the Facebook messages, and to the CAC interviewer. Given that the substance of the complainant's disclosure to her mother was not admitted into evidence, we conclude that the prosecutor's argument that the disclosure was consistent with her trial testimony was improper. See *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007) ("A prosecutor may not make a factual statement to the jury that is not supported by the evidence."). Next, as explained above, the complainant's statements to her friend, although in evidence, were improperly admitted because they contained inadmissible hearsay. By arguing that the complainant should be believed because her testimony was corroborated by disclosures that were inadmissible and that had not been admitted into evidence, the prosecution improperly bolstered the complainant's credibility. Although a prosecutor "may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Berger v United States*, 295 U.S. 78, 88; 55 S Ct 629; 79 L Ed 1314 (1935). We conclude that, in this case, the prosecutor crossed the line from proper argument into improper argument. And given that there is no strategic reason for failing to object to the prosecutor's improper closing argument, we conclude that Shannon's lawyer provided deficient assistance by not objecting. See *Armstrong*, 490 Mich at 289-290.

The prejudicial effect of the improper evidence and the improper closing argument was significant. The case contained no physical evidence and there were no witnesses who could corroborate the complainant's allegation that Shannon grabbed and squeezed her buttocks. As a result, the case amounted to a credibility contest between the complainant and Shannon. As will be explained in the next section, the prosecution improperly impugned Shannon's character by eliciting testimony that he was a drug dealer and that he had another "investigation" ongoing for which he had retained a lawyer. The prosecution then improperly bolstered the complainant's testimony by using her statements in the Facebook messages and by assuring the jury that she had made consistent disclosures to her mother and the CAC interviewer, despite the fact that no such evidence was admitted at trial with regard to the disclosure to her mother. This left the jury in the position of having improper evidence bolstering the complainant's credibility and improper evidence impugning Shannon's credibility. Given the nature of this case, there is a reasonable probability that, but for Shannon's lawyer's stipulation to admit improper testimony and her failure to object to the prosecutor's improper remarks during the closing argument, the outcome of the proceedings would have been different. *Armstrong*, 490 Mich at 289-290.

## 2. OTHER-ACTS EVIDENCE

Shannon argues that he was denied a fair trial because the prosecution presented other-acts evidence that he was a drug dealer and that he was under investigation for a "separate allegation." And, he argues that his lawyer was ineffective for failing to object to the other-acts evidence. We agree.

At trial, the prosecution questioned the complainant's mother regarding the relationship among herself, the complainant, and Shannon. During that exchange, the complainant's mother testified that Shannon was "like" an uncle to the complainant when she was a "kid," but that the relationship did not continue. When asked why, she explained:

> To be honest, I was a drug addict, and I got sober. He was my drug dealer, too. So, I stopped people, places and things when you got sober. So I did not talk to him anymore.

She then stated that she had "used pills" before becoming friends with Shannon, but that he had provided her "heroin" when she became addicted to a "harder drug."

At the time of Shannon's trial, MRE 404(b)(1) provided that, generally, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." However, such evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case." MRE 404(b)(1).

Shannon correctly points out that the prosecutor failed to provide written notice of its intent to introduce other-acts evidence under MRE 404(b)(2). However, reversal on that basis alone is not warranted. As explained in *Dobek*, 274 Mich App at 88, reversal is not warranted on the basis of lack of notice under MRE 404(b)(2) if the other acts-evidence is substantially admissible and if "there is no indication that defendant would have proceeded differently with proper notice."

Here, although Shannon does not provide any indication of what he would have done differently if he had had notice of the other-acts evidence, he does argue that the evidence was substantively inadmissible. The prosecution does not disagree. Rather, it argues only that the evidence was relevant to establish the details of how the complainant's mother knew Shannon and then argues that any error in the admission of the other-acts evidence is harmless.

First, the prosecution stresses that the complainant's testimony that Shannon grabbed her buttocks was "credible," and references the complainant's mother's testimony regarding the complainant's emotional demeanor when she disclosed the abuse. Yet, as explained above, the complainant's testimony was improperly bolstered by the prosecution during closing argument by evidence that had not been admitted and by evidence that was improperly admitted. Second, the prosecution notes that the complainant's mother testified that she was a drug addict and that the complainant admitted that she smoked marijuana with her boyfriend. Given that other witnesses were using drugs, the prosecution contends that the impact of any negative inferences that the jury

-6-

might have drawn from testimony that Shannon was a drug dealer who had sold heroin to the complainant's mother was lessened. But evidence that other individuals were using drugs is not equivalent to testimony that Shannon was selling drugs. It is axiomatic that the distribution of drugs, such as heroin, is worse than the mere use of such drugs. Moreover, the complainant's mother's testimony was not that she just purchased drugs from Shannon. She stated that she did not start harder drugs, such as heroin, until after she started buying from Shannon. Thus, the implication is that he got her "hooked" on more serious drugs.

Additionally, the prosecution highlighted Shannon's history as a drug dealer during closing argument. He argued that the complainant was a vulnerable individual because of her circumstances. One of the circumstances was that her mother was a drug addict and that her use of drugs was "kind of how she got to know [Shannon] more than—more than anything." Later, he again brought up Shannon's history as a drug dealer, stating:

> And then, we have his reaction which is kind of apologetic, but more blaming it on drugs. We heard the defendant has a history of using, giving over drugs, delivering drugs, whatever it was, whether it be pills or heroin.

He noted that, even if Shannon was "high," his intoxication was no defense to his sexual assault of the complainant.

Shannon's lawyer did not object to the improper testimony that Shannon was a drug-dealer, nor did she object to the prosecutor's improper references to that inadmissible testimony during his closing argument. We conclude that her failure amounts to constitutionally deficient performance. *Armstrong*, 490 Mich at 289-290. Indeed, there is no strategic reason for allowing highly prejudicial other-acts evidence to be presented and argued to the jury. See *Horn*, 279 Mich App at 39.

Shannon's lawyer also failed to object to the testimony from the police detective that she was unable to interview Shannon as it relates to the complainant's allegations because Shannon "already had retained an attorney as it relates to some other incident that had been reported." As noted by Shannon on appeal, the clear implication of this testimony was that Shannon had been accused of another crime and that the matter was serious enough that he had retained a lawyer to represent him. The nature of the "other incident" was not related to the jury. However, given that it had already heard testimony from the complainant's mother that Shannon was a "drug dealer," it is reasonable to assume that the jury would have inferred that he had been charged with a drug-related crime. Thus, although this testimony, standing alone, does not implicate MRE 404(b), we conclude that, when viewed in context of the entire record, Shannon's lawyer provided ineffective assistance by failing to object to it.

In sum, the prosecutor elicited highly prejudicial testimony from the complainant's mother that Shannon was a drug dealer who sold her "hard drugs" like heroin and that he could not be interviewed in this case because some "other incident" had occurred that required him to retain a lawyer. No curative instructions were given to the jury instructing it not to make an improper character inference from this evidence. Moreover, despite the blatantly improper nature of the other-acts evidence, the prosecutor brought it up twice during closing argument. As a result, just before deliberations, the jury was reminded that Shannon was a "bad guy" who sold drugs to the

complainant's mother. Thus, Shannon's credibility was improperly impugned by evidence that he was a drug dealer. And, given that the complainant's testimony was improperly bolstered as indicated above, we conclude that, but for the failure of Shannon's lawyer to object to the improper evidence and the prosecutor's improper use of it during closing argument, there is a reasonable probability that the outcome of the trial would have been different. See *Armstrong*, 490 Mich at 289-290.

### 3. APPEALS TO THE JURY'S SYMPATHY

Next, Shannon argues that the prosecutor improperly referred to the complainant's vulnerability in his closing argument. Alternatively, he asserts that his lawyer provided ineffective assistance by failing to object. We disagree.

During closing argument, the prosecutor argued:

What I would say to you is that the law protects certain people in our society including children, the elderly or the aged, mentally or physically incapacitated individuals, and that's because they're the most vulnerable people in our society.

And when I think of vulnerable people, and hopefully, when you all think of vulnerable people, [the complainant] comes to mind, or at least a child in her position. She comes from a disjointed family, if you will. Back and forth between mom and dad. Even run away between the two of them. A former drug addict for a mother. Grew up partially watching her mom on drugs, which is kind of how she got to know the defendant more than—more than anything, as [the complainant's mother] testified yesterday.

In addition to that, a 15-year-old who is allowed to use marijuana, go see her boyfriend at all hours of the morning, not a good situation for a young teenager, clearly.

And then, what better person to prey on if you're [Shannon], but somebody that you already know very well, know their vulnerabilities, know of the opportunity that you have to make a move, to do something inappropriate to see where that action takes you. I don't know. Thankfully, we don't know what would have happened had [the complainant] not reacted the way she did.

The prosecution has "a duty to see that defendants receive a fair trial while attempting to convict those guilty of crimes." *People v Ullah*, 216 Mich App 669, 678; 550 NW2d 568 (1996). However, "[e]motional language may be used during closing argument and is an important weapon in counsel's forensic arsenal." *Id*. at 679 (quotation marks and citation omitted). For instance, during opening and closing arguments in *People v Ackerman*, 257 Mich App 434, 451; 669 NW2d 818 (2003), the prosecution explained that the case involved " 'exploitation' and 'the bold manipulation of an entire community of children,' and that [a community facility that the victim frequented] was intended 'for children who came from broken homes, homes where substance abuse was a problem, homes where there wasn't necessarily two parents to raise the family.' " The

*Ackerman* Court concluded that the prosecution's statements were not improper because they "were reasonably related to the prosecution's theory that defendant selected vulnerable children to molest." *Id*. at 453.

Like the prosecution's statements in *Ackerman*, the prosecution's closing argument in this case reiterated evidence that was already presented at trial to draw the reasonable conclusion that Shannon could have used his knowledge of the complainant's vulnerabilities—including her troubled upbringing and home life—to easily target her. Further, Shannon was not prejudiced by these remarks because his lawyer referred to similar vulnerabilities in her closing argument. Specifically, she used these vulnerabilities to argue that the complainant falsely accused Shannon in order to get out of trouble for staying out late without permission. Given the evidence presented and the parties' theories of the case, the prosecution's argument was proper. See *id*. at 454. Any objection by Shannon's lawyer, therefore, would have been futile, so Shannon's lawyer was not ineffective for failing to object. *Zitka*, 335 Mich App at 341.

## III. CONCLUSION

The prosecutor did not improperly refer to the complainant's vulnerability in his closing argument. Consequently, Shannon's lawyer was not ineffective for failing to object to that line of questioning. However, the Facebook messages between the complainant and her friend were inadmissible hearsay and Shannon's lawyer provided constitutionally deficient assistance by stipulating to their admission. The prosecution's argument that the complainant's testimony was consistent with her disclosure to her mother and to the CAC investigator was improper because it was based upon facts not admitted into evidence. Compounding this error, the prosecutor improperly bolstered the complainant's testimony during closing argument by suggesting that she should be believed because her trial testimony was consistent with those disclosures. Shannon's lawyer provided constitutionally deficient assistance by failing to object to the prosecutor's improper bolstering of the complainant. Likewise, Shannon's lawyer provided deficient assistance by failing to object to other-acts evidence indicating that Shannon was a drug dealer who had sold heroin to the complainant's mother, by failing to object to testimony that he had retained a lawyer in relation to another incident, and by failing to object to the prosecutor's use of the other-acts testimony during his closing argument.

This case was primarily a credibility contest between Shannon and the complainant. But the jury was not given an opportunity to fairly evaluate their credibility because the improper evidence and arguments by the prosecutor made stronger the complainant's credibility and weakened Shannon's credibility. As a result, we conclude that there is a reasonable probability that, but for the errors by Shannon's lawyer, the outcome of this case would have been different. *Armstrong*, 490 Mich at 289-290.[2]

---

[2] Given our resolution, we need not address Shannon's argument that he is entitled to reversal on the basis of cumulative error. Nor do we reach Shannon's arguments related to the requirement that he register under SORA.

Reversed and remanded for a new trial.  We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Michael J. Kelly
/s/ Christopher P. Yates