*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CONRAD AUSTIN VANDERMEL,

Defendant-Appellant.

UNPUBLISHED
May 28, 2026
1:07 PM

No. 366938
Kent Circuit Court
LC No. 22-000909-FH

Before: Trebilcock, P.J., and Boonstra and Letica, JJ.

Per Curiam.

Defendant appeals by right his jury conviction of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) (person under 13 years old).[1] He was sentenced to 2 to 15 years' imprisonment. Defendant was also required to submit to lifetime electronic monitoring (LEM) and lifetime registration as a sex offender under the Sex Offender Registration Act (SORA), MCL 28.721 *et seq*. On appeal, defendant claims that his right to the effective assistance of counsel was violated because defense counsel failed to consult with and call an expert in child memory and suggestibility at trial and failed to challenge the admission of the victim's first interview. He further challenges the LEM and SORA registration requirements. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

In August 2021, RR, who was then five years old, advised her teacher that she wanted to speak with her. RR told her teacher that she saw defendant masturbating one day while RR and LV, defendant's then eight-month-old daughter, were present (the masturbation incident).[2] RR and her mother had been living with defendant and his then-wife, Holly Vandermel, in a farmhouse since July 2021. Defendant often babysat the children when RR's mother and Holly were tending

---

[1] In light of the victim's testimony, the prosecutor voluntarily dismissed a second count of CSC-II at trial.

[2] The teacher indicated that RR approached her about the masturbation incident. At trial, RR testified that another child revealed the incident to the teacher.

to the farm or running other errands. RR's teacher, a mandatory reporter, notified her supervisor, and RR's mother was apprised of the disclosure that day. RR's mother then called Holly. Holly spoke to defendant about the incident, and he gave an initial denial and then subsequent explanations for RR's report. Defendant admitted that he masturbated in the room where the children were present. He also acknowledged viewing pornography. But defendant denied that he watched child pornography and that he engaged in other sexual contact with the children. Holly instructed defendant to leave the family home, and he complied.

RR went to the Children's Advocacy Center (CAC) in Kent County where she was forensically interviewed by Augustena Baar, a forensic services supervisor. Baar interviewed RR alone, but the entire interview was video recorded. In the interview, RR told Baar about the masturbation incident and about seeing defendant's penis. Baar asked RR to identify her "private parts." Specifically, she inquired of RR, "[W]hat do you call the part of your body that you use to go pee with?" RR answered, "It's my butt." Baar then asked, RR "has someone ever done something to the butt that you used to go pee with?" RR responded that defendant "used to grab it and just do something." RR then told Baar that defendant had wiped his penis on "the butt she used to go pee with." RR said that this happened only once. When Baar asked RR to tell her about that incident from the beginning, RR responded that she did not know because she had forgotten. RR said that this incident occurred on a different day than the masturbation incident.

RR later revealed an additional sexual contact to her therapist at CAC, which prompted a second interview with Baar. On the basis of RR's disclosures, defendant was charged with two counts of CSC-II. At trial, only Baar and RR testified about sexual contact between defendant and RR. Baar briefly discussed the forensic interview process, and then the video of Baar's first interview with RR was played for the jury without objection. Baar testified that RR had told her that defendant had touched RR's vaginal area with his penis, as reflected in the interview video.

Defense counsel cross-examined Baar:

*Q*. Did you view this video before coming to trial?

*A*. I did.

*Q*. Okay. Once or more?

*A*. Once.

*Q*. I noticed throughout the entire interview you pretty much accept everything [RR] says is true, correct?

*A*. I wouldn't say I accept it as true; I just take it as the statement that it is.

*Q*. Okay. Is it fair to say that you never test the veracity of what [RR's] saying?

*A*. I'm not a human lie detector, so I can't tell if someone's telling the truth or a lie.

*Q*. Okay. So you're not here telling this jury that any of that was true, just that that's what [RR] said, correct?

The prosecution objected on relevancy grounds, and the trial court sustained the objection. Defense counsel then asked:

*Q*. [RR] said she forgot several times for key elements, is that correct?

*A*. She did tell me she forgot.

Defense counsel then concluded Baar's cross-examination.

RR testified[3] that defendant had rubbed her genital area one day when she was alone with defendant on the couch in the living room. She described that she was facing away from defendant while defendant lifted her legs onto his belly. RR said that defendant had pulled down her clothes, but she could not describe precisely what defendant did. RR testified that defendant only touched her in this way one time. RR denied that anything had happened with defendant's penis, but she recalled that she had seen defendant's penis during the masturbation incident.

At trial, RR indicated that she revealed "that" incident to a girl at school who relayed the information to the teacher. RR then had to give the information to "a different person" who told RR's mother. RR indicated that defendant did not take all her clothes off, only "like in the half." On cross-examination, defense counsel elicited that RR had no recollection of when this incident occurred, did not know the time of day, and now claimed that the first person told was a girl at school who relayed the information to a teacher. After conferring with defendant, defense counsel ended RR's cross-examination without asking any further questions. The jurors also did not have any questions for RR.

Defense counsel's closing argument highlighted that RR had not said that defendant touched her inappropriately when she told her teacher or her mother about the masturbation incident. He noted that defendant had always denied sexual contact with RR, there was no physical evidence, and RR gave different versions of what transpired. Counsel stated, "It wasn't until our other witness, [Baar] had been in the video with her that touching started coming about. And I would propose to you that that was because of the way [Baar] was questioning [RR], as opposed to what really happened." Defense counsel indicated that RR's statements and testimony were the only evidence against defendant. He opined that the prosecutor failed to overcome the presumption of innocence, and therefore, the jury must find defendant not guilty.

Nonetheless, the jury found defendant guilty. Defendant moved the trial court for an evidentiary hearing and a new trial on the ground that defense counsel had been ineffective. Defendant also asked the trial court to vacate the portions of defendant's sentence requiring him to register as a sex offender under SORA and to submit to LEM. He alleged that those portions of his sentence constituted unconstitutionally cruel or unusual punishments and LEM was an

---

[3] RR was not present in the courtroom but testified remotely.

unreasonable search under the Michigan and United States Constitutions.  The trial court denied defendant's motions.[4]

## II.  ANALYSIS

## A.  EXPERT WITNESS

Defendant asserts that he is entitled to a new trial because defense counsel was ineffective for failing to consult with an expert in child memory or suggestibility in preparation for trial or for failing to call such an expert at trial.  We disagree.

To preserve a challenge to the effective assistance of counsel, a defendant must move for a new trial or for a hearing under *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).  *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020).  Defendant preserved his claim by moving for a new trial.  Because an evidentiary hearing was not held, our review is limited to errors apparent on the record.  *Id.*

"The question whether defense counsel performed ineffectively is a mixed question of law and fact[.]" *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012).  The appellate court reviews the trial court's factual findings for clear error.  *Id.*  Questions of law are reviewed de novo.  *Id.*

The Michigan and United States Constitutions guarantee criminal defendants the right to be represented by an attorney.  Const 1963, art 1, § 20; US Const, Am VI.  A criminal defendant is entitled to the effective assistance of counsel.  *People v Otto*, 348 Mich App 221, 231; 18 NW3d 336 (2023).  "A defendant must meet two requirements to warrant a new trial because of the ineffective assistance of counsel." *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011).  The defendant must first demonstrate "that counsel's performance fell below an objective standard of reasonableness.  In doing so, the defendant must overcome the strong presumption that counsel's assistance constituted sound trial strategy." *Id.* at 290.  In examining defense counsel's performance, "the reviewing court must first objectively 'determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.' " *People v Jackson (On Reconsideration)*, 313 Mich App 409, 431; 884 NW2d 297 (2015), quoting *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984).  Second, the defendant must show that, "but for counsel's deficient performance, a different result would have been reasonably probable." *Armstrong*, 490 Mich at 290.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 US at 694.

The defendant bears the burden of demonstrating the factual predicate for his claim of ineffective assistance of counsel.  *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014).  To demonstrate deficient performance, "the defendant must overcome the strong

---

[4] Defendant subsequently moved this Court to remand this case to the trial court for an evidentiary hearing, which this Court also denied.  *People v Vandermel*, unpublished order of the Court of Appeals, entered June 16, 2025 (Docket No. 366938).

presumption that counsel's assistance constituted sound trial strategy." *Armstrong*, 490 Mich at 290. That is, defense counsel is given the strong presumption that adequate assistance was rendered, and all significant decisions were made in the exercise of reasonable professional judgment. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). When claiming ineffective assistance premised on defense counsel's unpreparedness, there is a requirement that a defendant show prejudice resulting from this alleged lack of preparation. *People v Caballero*, 184 Mich App 636, 640; 459 NW2d 80 (1990). This showing must include evidence of an investigation or affidavits that would reveal information beneficial to the defendant. *Id*. "The failure to make an adequate investigation is ineffective assistance of counsel if it undermines confidence in the trial's outcome." *People v Grant*, 470 Mich 477, 493; 684 NW2d 686 (2004). To succeed on a claim of ineffective assistance premised on the failure to call witnesses, a defendant need not demonstrate a deprivation of a substantial defense. *People v Jurewicz*, 506 Mich 914, 915 (2020). Rather, the standard applicable to ineffective assistance for the failure to call witnesses is the same as for all other such ineffective assistance of counsel claims. It involves consideration of whether counsel's performance fell below an objective standard of reasonableness and, but for counsel's deficient performance, whether there is a reasonable probability that the outcome would have been different. *Id*.

As noted, the defendant bears the burden of demonstrating the factual predicate for his claim of ineffective assistance of counsel. *Douglas*, 496 Mich at 592. Defendant focuses on the failure to call an expert and the assistance it would provide a jury when determining child suggestibility. But defendant failed to present any evidence addressing whether trial counsel contemplated calling an expert, whether trial counsel chose to rely on RR's deficient recollection to avoid challenging or attacking the child victim during trial and potentially alienating the jury,[5] and whether trial counsel simply chose to challenge RR's recollection to prevent the case from becoming a battle of expert opinions. Indeed, it also could be questioned by laypersons as well as experts whether RR "forgot" specific details or simply did not want to discuss embarrassing or intimate matters in a public setting, albeit remotely.

Appellate counsel presented an "offer of proof" indicating that trial counsel could not recall specifics regarding trial preparation. And appellate counsel's offer of proof merely noted that trial counsel acknowledged that an expert was not consulted. However, an explanation for that omission is completely lacking from the offer of proof.[6] Further, trial counsel's area of expertise,

---

[5] Indeed, defense counsel acknowledged the care that must be taken when examining a child victim or witness. When arguing in opposition to the prosecutor's motion for special arrangements to allow RR to testify from another location, defense counsel stated, "I understand that this is a very young child, but I would have very little incentive and it would do absolutely no good to beat up this child on a witness stand in front of a jury. The only thing that I believe that would do is garner more sympathy for the alleged victim than anything else."

[6] The offer of proof does not address the hearsay contained therein and the failure to obtain an affidavit from trial counsel. The offer of proof merely indicates that appellate counsel spoke with trial counsel about his knowledge and pretrial investigation of defendant's case. The offer of proof states that, at the time, trial counsel did not have a "clear memory" of the case. But trial counsel

years of experience, and number of cases tried are not set forth in appellate counsel's offer of proof. In this context, defendant addresses the potential benefit of the expert testimony, not the factual predicate underlying the claim of ineffective assistance of counsel or the presumption of trial strategy. Rather, trial counsel pursued the theory without consulting an expert that RR repeatedly changed her story regarding her contact with defendant and "forgot" specific details. There are numerous explanations why trial counsel would reasonably proceed without benefit of an expert.[7] The failure to call an expert, without addressing trial counsel's experience, investigation, and strategy when questioning a child witness, does not lead to the conclusion that counsel's performance fell below an objective standard of reasonableness. *Jurewicz*, 506 Mich at 915. Moreover, defendant failed to demonstrate that this omission caused him prejudice. That is, defendant did not show that, "but for counsel's deficient performance, a different result would have been reasonably probable." *Armstrong*, 490 Mich at 290.

## B. FORENSIC INTERVIEW ADMISSION

Next, defendant alleges that trial counsel was ineffective for failing to object at trial to the admission of RR's statements in the first forensic interview. We disagree.

As an initial matter, we note that the prosecutor moved for special arrangements to protect the welfare of RR as a child witness, MCL 600.2163a(18). The prosecutor also gave trial counsel notice of her intent to introduce evidence under MRE 404(b) (admission of other crimes, wrongs, or acts), MRE 803A (admission of child's first statement about a sexual act), and MCL 768.27a (admission of the commission of another listed offense against a minor, including witness statements). This notice referenced defendant's admissions to the masturbation incident in a prior case and alleged the evidence was properly admissible for the purpose of showing motive and intent. It was further asserted that defendant was aware of the anticipated testimony because of the previously submitted report. Defendant did not file a written response to the notice of intent. At the hearing addressing admission of other acts and witness statements, the prosecutor argued that because the victim gave separate disclosures to different persons regarding the separate incidents, the first person to whom RR disclosed was different and each disclosure was admissible. Defense counsel simply objected to the admission "without argument." The trial court granted the motion referencing "the rules in the statute listed" and the legal filings.

On appeal, defendant challenges, as ineffective assistance, trial counsel's failure to object at trial to the admission of RR's statement in the first forensic interview because it was not the

---

"was certain he had not consulted an expert in connection with" defendant's case. The offer of proof does not indicate whether trial counsel was able to examine his case file before they spoke. And the offer of proof contains no rationale for the lack of a consultation. A foundation to overcome the presumption of trial strategy and warrant further investigation is simply lacking.

[7] Indeed, on appeal, defendant's proposed expert, Dr. Daniel Swerdlow-Freed acknowledged that, in the majority of cases he reviewed, there were no substantial mistakes relevant to a young child's disclosure of abuse. See also *In re Casto*, 344 Mich App 590, 605; 2 NW3d 102 (2022). Dr. Swerdlow-Freed further indicated that he would want to know the circumstances that proceeded the disclosure that RR made to her therapist.

initial statement made and allegedly constituted hearsay contrary to MRE 803A. But the trial court's ruling was also premised on MCL 768.27a,[8] and defendant fails to challenge the trial court's admissibility ruling in light of the statute. Because defendant failed to challenge this ground for the trial court's ruling, we need not grant him appellate relief. See *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411 (2001) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment of an issue with little or no citation of supporting authority."). Moreover, upon objecting before the adverse ruling on admissibility in advance of trial, counsel was not required to renew his objection. MRE 103(b).[9]

Even if we assume, without deciding, that RR's statements in the first forensic interview were hearsay that did not fall within the exception of MRE 803A, admitting RR's statements at trial reasonably served defense counsel's trial strategy. It is apparent from closing argument that trial counsel sought to establish reasonable doubt premised on RR's different reports to others. Initially, RR told her teacher and her mother that contact with defendant did not involve any touching. Rather, RR only witnessed an act of masturbation. Defendant was recorded making statements to Holly. Defendant ultimately acknowledged the commission of an act of masturbation in the children's presence. He denied viewing child pornography or other improper acts. Accordingly, defense counsel argued that reasonable doubt was presented to the CSC-II charge because defendant denied that any touching occurred and acknowledged that no physical evidence supported sexual contact. It was only after further interviews and therapy that RR spoke of sexual contact. Trial counsel argued that RR "told different parts of this story in different ways" and suggested that Baar's manner of questioning did not reflect what actually transpired. If defense counsel had successfully objected to the admission of the first forensic interview, he would have excluded the recording of Baar's alleged improper questioning and another variance in RR's statements. This would have prevented the jury from seeing how RR was questioned, which was part of defense counsel's strategy. Additionally, exclusion of the first interview would have prevented the jury from observing contradictions with RR's trial testimony. Thus, a strenuous and successful objection to the admission of this evidence before and at trial would have deprived defendant of evidence to support his trial theory. Under the circumstances, defendant cannot show that defense counsel's tactical decision not to object to the admission of RR's statements from the first forensic interview at trial fell below an objective standard of reasonableness. *Armstrong*, 490 Mich at 290.

---

[8] Under MCL 768.27a, in a criminal case in which a defendant is accused of committing a listed offense against a minor as set forth in SORA, evidence of the commission of another listed offense against a minor is admissible on any relevant matter. "If the prosecuting attorney intends to offer evidence under this section, the prosecuting attorney shall disclose the evidence to the defendant at least 15 days before the scheduled date of trial or at a later time as allowed by the court for good cause shown, *including the statements of witnesses* or a summary of the substance of any testimony that is expected to be offered." (Emphasis added).

[9] "Once the court rules definitively on the record—either before or at trial—a party need not renew an objection or offer of proof to preserve a claim of error for appeal." MRE 103(b).

## C. LIFETIME SORA REGISTRATION AND LEM

Defendant next contends that his sentence constitutes cruel or unusual punishment for requiring lifetime registration under SORA and LEM. We disagree.

The United States Constitution prohibits "cruel and unusual" punishments, but the Michigan Constitution prohibits "cruel or unusual" punishments. US Const, Am VIII; Const 1963, art 1, § 16. Because our state constitution provides broader protections than the federal constitution, "if a sentence is constitutional under Michigan's standard, it is constitutional under the Eighth Amendment as well." *In re Harder*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 368645); slip op at 10. "A party challenging the constitutionality of a statute has the burden of proving its invalidity." *People v Jarrell*, 344 Mich App 464, 482; 1 NW3d 359 (2022). The constitutional challenge may be brought as a facial or an as-applied challenge. *Id*. "A facial challenge involves a claim that there is no set of circumstances under which the enactment is constitutionally valid, while an as-applied challenge considers the specific application of a facially valid law to individual facts." *Id*. (quotation marks and citations omitted).

Because of his CSC-II conviction, defendant was classified as a Tier III offender under SORA. MCL 28.722(u) and (v). Accordingly, he must register as a sex offender for life, which includes the publication of certain personal information on the online sex offender registry and significant reporting requirements to verify residence, employment, and contact information. See *Jarrell*, 344 Mich App at 484. The *Kardasz* Court concluded that the 2021 SORA constitutes a punishment for all registrants, regardless of the crime that they committed. *Kardasz*, ___ Mich at ___; slip op at 33. But that punishment is not cruel or unusual on its face, *id*. at ___; slip op at 34, and therefore, defendant's facial challenge to the constitutionality of the 2021 SORA fails.[10]

We also reject defendant's challenge to the constitutionality of MCL 750.520n on the basis that LEM is cruel or unusual punishment or an unconstitutional search. Defendant was sentenced to LEM because he was convicted of CSC-II against RR, a victim under 13 years old. MCL 750.520n(1). Failure to maintain a working electronic monitor, failure to notify the Department of Corrections that the device is damaged, or failure to reimburse the Department of Corrections for the cost of the monitoring is a felony. MCL 750.520n(2). LEM is recognized as a punishment. *People v Cole*, 491 Mich 325, 336; 817 NW2d 497 (2012). And after considering the factors relevant to gross disproportionality, this Court determined that LEM is not cruel or unusual punishment on its face. *People v Hallak*, 310 Mich App 555, 577; 873 NW2d 811 (2015), rev'd in part on other grounds 499 Mich 879 (2016). Because we are bound by the *Hallak* decision, MCR 7.215(C)(2), defendant's facial challenge to LEM necessarily fails.[11]

Both the United States Constitution and the Michigan Constitution also prohibit unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. Article 1, § 11

---

[10] Defendant did not raise or analyze an "as applied" challenge.

[11] Our Supreme Court recently granted leave to appeal in a case that challenges whether LEM is cruel or unusual punishment or an unreasonable search. *People v Ringle*, ___ Mich ___; 28 NW3d 725 (2025). Until a decision is rendered, we follow our precedent.

generally provides the same protection as the Fourth Amendment. *People v Collins*, 438 Mich 8, 25; 475 NW2d 684 (1991). The use of a Global Positioning System tracking device to track the location of a sex offender is a search under the Fourth Amendment. *Grady v North Carolina*, 575 US 206, 307, 310; 135 S Ct 1368; 191 L Ed 2d 459 (2015). Accordingly, the use of LEM in Michigan is also a search. *Hallak*, 310 Mich App at 579. "But, as the *Grady* Court also noted, that conclusion does not end the Fourth Amendment inquiry, as the Fourth Amendment only precludes *unreasonable* searches." *Id*.

The *Hallak* Court balanced the public interests of punishing and deterring child sex offenders and protecting children with the invasion of the defendant's privacy interests. *Id*. at 580-581. This Court concluded that although "it may certainly be that such monitoring of a law[-]abiding citizen would be unreasonable, on balance the strong public interest in the benefit of monitoring those convicted of CSC-II against a child under the age of 13 outweighs any minimal impact on defendant's reduced privacy interests." *Id*. at 581. Again, we are bound by *Hallak*, MCR 7.215(C)(2), and therefore, defendant's Fourth Amendment challenge necessarily fails.[12]

Affirmed.

/s/ Christopher M. Trebilcock
/s/ Mark T. Boonstra
/s/ Anica Letica

---

[12] Our Supreme Court denied Kardasz's application for leave to appeal issues regarding the constitutionality of LEM. *Kardasz*, ___ Mich at ___; slip op at 4.